VIRGINIA ELECTRIC AND
POWER COMPANY

v.

SUN SHIPBUILDING AND
DRY DOCK CO.

v.

STONE & WEBSTER ENGINEERING
CORP.

Civ. A. No. CA 74–0483–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 8, 1976.

R. Kenneth Wheeler, Hunton, Williams, Gay & Gibson, Thomas G. Slater, Jr., Richmond, Va., for plaintiff.

Charles W. Laughlin, Richmond, Va., for Stone & Webster.

Rosewell Page, III, Richmond, Va., for Sun Shipbuilding.

## MEMORANDUM

WARRINER, District Judge.

A motion and supporting memorandum for disqualification of the presiding judge in the above action was filed by defendant, third party plaintiff, Sun Shipbuilding and Dry Dock Company on 9 September 1975. Plaintiff Virginia Electric and Power Company (VEPCO) and third party defendant Stone and Webster Engineering Corporation filed their memoranda in response on 19 September 1975. Oral argument was heard on the motion on 24 November 1975 wherein all parties addressed the issue, the Court thereafter giving findings of

fact and conclusions of law from the bench.

In recognition of the gravity of this issue and its apprehension as to whether all aspects of the pertinent law were exhausted in the tendered briefs and oral argument, the Court deemed it appropriate to explicate its opinion from the bench by means of a written opinion. The process of writing the opinion has brought about a change in the Court's conclusion.

Plaintiff Vepco services the inhabitants of Eastern Virginia with electricity. The presiding judge resides in this area and is a customer of plaintiff. Defendant projects, and for the purposes of this motion the Court accepts, that if plaintiff is fully successful in its action seeking some $160,000,000 in damages, the outcome might result in a general reduction of Vepco rates which could personally benefit the presiding judge to the extent of approximately $100.00.

Defendant insists that this possibility of pecuniary benefit requires the Court to disqualify itself. Defendant cites the due process clause;[1] the Code of Judicial Conduct of the ABA[2] as adopted by the Judicial Conference of the United States; 28 U.S.C. § 455; and Section 455, as amended,[3] in support of this proposition.

■■■ There is no question that the Court is bound by the due process clause. As to the Code of Judicial Conduct, this Court is in agreement with the opinion of Judge Hemphill that it is not bound by the directives of the Judicial Conference on the issue.[4] The Court is also cognizant that the unamended version of 28 U.S.C. § 455 is the applicable statutory law in this case.[5] Nevertheless, this Court believes the appropriate approach to the question would include consideration of the more lately expressed intent of Congress and thus the Court shall consider both the amended and unamended versions of Section 455 in rendering its decision. Congress amended Section 455 for the express purpose of conforming federal law on disqualification to the directives of the Code of Judicial

1. *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

2. With regard to the provision in question the Judicial Conference of the United States, in 1973, adopted the exact language of the Code of Judicial Conduct of the ABA:

 C. *Disqualification* (1) A judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where . . . (C) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding or any other interest that could be substantially affected by the outcome of the proceeding . . .

3. The unamended version of 28 U.S.C. § 455 reads in pertinent part as follows:

 *Interest of justice or judge.* Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest . . . as to render it improper, in his opinion, to sit on the trial, appeal or other proceeding therein.

 The relevant provisions of 28 U.S.C. § 455, *as amended*, state:

*Disqualification of justice, judge, magistrate, or referee in bankruptcy.* (a) Any judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself in the following circumstances: . . . (4) He knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . .

4. *Duplan Corporation v. Deering Milliken, Inc.*, 400 F.Supp. 497 (D.S.C.1975):

 The Court is of the opinion that the Judicial Conference has been pre-empted in the field by an act of Congress and that insofar as legal and binding force and effect is concerned, the act of Congress has pre-eminence. The actions of the Judicial Conference, of course, are entitled to great respect. See pages 333–334 of this opinion.

5. Section 3 of 28 U.S.C. § 455, *as amended* reads:

 This Act shall not apply to the trial of any proceeding commenced prior to the date of this Act . . . .

Conduct,[6] the language of which is similar to, but not the same as that of the amended statute.[7] Therefore, the Court shall also look to the intent of the drafters of the *Code of Judicial Conduct* for guidance in the meanings intended by the language used.[8]

In light of the above authorities, the Court finds that it must be able to answer each of the following questions in the negative if it is to remain as judge of the case: 1) does the Court have a "financial interest" in the subject matter in controversy; 2) does it have any direct and personal pecuniary interest in the case; 3) does the Court, in its opinion, have a substantial interest herein; 4) does it have any interest of such a nature that its impartiality may reasonably be questioned; 5) does it have any other interest that could be substantially affected by the outcome of the proceeding.

Both the Code of Judicial Conduct and 28 U.S.C. § 455, as amended, define "financial interest, as "ownership of a legal or equitable interest, however small."[9] Clearly, whatever interest the Court may have in the subject matter in controversy, it does not constitute a "financial interest" as defined above. It has "ownership" of no interest—legal or equitable. Third party defendant's brief succinctly states what the Court actually has "a vague and undefined interest, not ownership, in a credit or accounting adjustment which might be made by Vepco if it fully recovers."[10] Therefore, the Court must answer question one in the negative.

The second question, whether the Court has any direct and personal pecuniary interest in the case, is perceived to be a due process question. In *Tumey v. Ohio* the Court stated:

> [I]t certainly violates the [14th] Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of [the] court, the judge of which has a direct, personal, substantial pecuniary interest. 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749.

Although *Tumey* used the adjective "substantial," that word's conventional meaning was modified by further elaboration in the case to the effect that due process required disqualification if the interest was more than *de minimis*. *Id.* at 531, 47 S.Ct. 437. The amount of money involved in the possible rate reduction herein is somewhat more than *de minimis*, but it is neither direct nor personal. Defendant does not dispute this fact, however, it cites other due process cases which hold that the interest of a judge need not be as direct nor as per-

---

The instant case was commenced prior thereto, thus the unamended version of 28 U.S.C. § 455, is applicable though no longer the law.

6. See text of this memorandum at p. 332.

7. See Footnote 26.

8. There are actually two Codes of Judicial Conduct; the original Code was formulated by the ABA and adopted thereby in August 1972; the other, "The Code of Judicial Conduct for United States Judges" was approved by the Judicial Conference of the United States in September 1973 and is a virtually identical adaptation of the ABA Code. The ABA Code is supplemented by Reporter's Notes authored by E. Wayne Thode, the Reporter of the ABA's Special Committee on Standards of Judicial Conduct. The forward to the Reporter's Notes explains that:

> These notes are a product of the research directed by the Reporter, the Notes he took at Committee meetings, the materials in his files documenting the evolutionary development of the Code and the impressions he formed as to the reason for Committee decisions. This information is published to illuminate the development scope and application of the Code.

The Judicial Conference did not supplement its adaptation of the Code with notes. It has issued advisory opinions relating to the Code but none of those opinions deal with the issues involved in this case. Hence, Thode's Notes provide the only authoritative clue as to the intent behind the language of the Code's provisions discussed herein.

9. Code of Judicial Conduct, Canon 3 C(3)(c); 28 U.S.C. § 455(d)(4), *as amended.*

10. Third party defendant's Memorandum in Opposition to Sun Shipbuilding's Motion for Disqualification, p. 11.

sonal[11] as it appeared to be in *Tumey* in order to require disqualification.

The interest herein is clearly distinguishable from those analyzed in the cases cited by defendant. Those interests rested upon only one basic contingency—the outcome of the trial. Depending upon how the trial was determined, the interest, though not in as direct a manner as in *Tumey*, would enure to the benefit of the presiding judge. In the instant case the outcome is just one of many contingencies upon which hinges the possibility of the judge obtaining a benefit. These other contingencies, which are described in plaintiff's brief,[12] are completely outside of the Court's control. Indeed the happenstance of this judge actually deriving the alleged benefit from the interest in question is at most a remote possibility, hardly the type of interest proscribed in *Tumey*.

■ As for the *Tumey* requirement that the interest be "personal," this Court opines the word "personal" is used in the sense that the interest is peculiar to that judge, that is, the interest is to enure to a particular individual as in *Tumey*, or to a particular group or entity distinguishable from the general public, as in the other cases cited by defendant on this issue. The benefit to the presiding judge herein is one that would be universally enjoyed throughout the Eastern District. It is not particularized, it is not "personal."

This Court cannot imagine any person in the service area, young or old, poor or rich, who would not be adversely affected, at least monetarily, by an increase in Vepco rates and conversely benefited by a decrease. This includes customers and non-customers alike. Cases subsequent to *Tumey* have read that case liberally

to find certain shared interests to be "personal," but this Court cannot in good conscience torture the *Tumey* meaning of "personal" to the extent necessary to require the Court to recuse itself in this case.

■ The next inquiry is required by the unamended version of 28 U.S.C. § 455 which, although no longer the law, is applicable to this case. Defendant contends that the phrase "substantial interest," used therein, must be construed in accord with the *de minimis* language in *Tumey*, which held that "substantial" is descriptive of any interest which is not *de minimis*. In the Court's mind, however, the Section 455 "substantial interest" language is not equivalent to what is meant by "substantial" in *Tumey*. That case uses the word referring exclusively to direct and personal pecuniary interests in a due process context.[13] The statute refers to *any* "substantial interests" whether or not pecuniary.[14] Since the subject matter of *Tumey* is inapposite to that of the statute, the Court does not consider that case's gloss on the word "substantial" to be appropriate here. Indeed, the Court believes there is considerable ground between what the statute calls a "substantial interest" and what *Tumey* refers to as a "*de minimis* interest" and in that ground between the two concepts can be found the appropriate measure of the interest in question. In other words, the Court finds that its interest as a ratepayer is somewhat more than *de minimis* or a mere trifle[15] but surely less than substantial or considerable.[16] This finding, vague in the abstract, can be appreciated when discussed by way of concrete example. A federal judge makes some $42,000 a year. If the situation arose where he would or would not benefit to the

---

**11.** *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Ward v. Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972).

**12.** Response of Virginia Electric and Power Company to Sun Shipbuilding and Dry Dock Company's Motion for Disqualification pp. 1–4.

**13.** *See* pages 326–327 of text.

**14.** *See* note 3 *supra*.

**15.** Ballentine's Law Dictionary at page 331 defines *de minimis* as "concerning trifles."

**16.** Webster's Third New International Dictionary defines at page 2280 "substantial," in the context used herein, as "considerable in amount."

amount of $1.00 depending upon the outcome of a case before him, clearly such an interest would be termed *de minimis.* If the amount of benefit at stake were instead $10,000, just as clearly this interest would be labeled substantial. But what about $100 which is the amount of benefit the presiding judge has accepted to be the amount he could obtain from his interest herein? To be sure, a man who earns $42,000 a year would not consider $100 a mere "trifle," but in his position would he consider $100 as a "considerable" interest? This Court does not think so. It is not overly nice to distinguish interests that are less than considerable, perhaps non-substantial, but not trifling. These measures, of necessity, are inexact, but not meaningless. More important, the distinctions which the Court perceives to exist are useful in realistically appraising "interests" with regard to the question of disqualification.

Notwithstanding the above, and accepting *arguendo* defendant's contention that *Tumey* puts a gloss on Section 455, this does not lead to the conclusion that recusal is required. For if the word "substantial" is to be read in light of *Tumey,* then the word "interest" must be read in the same light, that is, the interest must be direct and personal. Since it has been determined that the interest herein is neither direct nor personal, as defined, Section 455 can also be answered in the negative.

The next inquiry, required by Canon 3C(1) of The Code and Section 455(a), *as amended,* requires disqualification if a judge possesses any interest in a proceeding of such a nature that "his impartiality might reasonably be questioned." The meaning of this general standard for disqualification is discussed in the Reporter's Notes to the Code of Judicial Conduct:

> Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's "impartiality might reasonably be questioned" is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety in violation of Canon 2 that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard, as does participation by the judge in the proceeding if he thereby creates the appearance of a lack of impartiality.[17]

The language of this provision is substantially broader and more inclusive than that of the other four criteria to which the Court is subjected, and encompasses a wide range of bases for disqualification not specifically addressed by the other provisions. However, in each instance where application of this provision would require recusal, the challenge to impartiality must be, as above noted, a reasonable one.

After reviewing all the essential allegations pertinent to the disqualification issue, and weighing the possible personal benefits which might accrue to the Court from a plaintiff's verdict, against the reasonableness of the appearance of partiality resulting therefrom, the Court is satisfied that this judge's status as a ratepayer would not convey the appearance of bias or lack of impartiality to a man of reasonable judgment. The possibility of pecuniary benefit is so conditional, so remote, and so equally shared by all Vepco customers, that any challenge to the Court's objectivity on that possibility is without reasonable foundation. Were the relationship between the Court and plaintiff more direct, the benefits of a plaintiff's verdict more certain, a different situation might be presented. However, the facts involved herein are sufficient to protect the Court and the judicial process from any reasonable suspicion of bias or prejudice in deciding the matters in issue.

The final and most difficult question this Court is faced with is whether or not it has "any other interest that could

---

17. Thode, Reporter's Notes to the Code of Judicial Conduct, 60–61 (1973). [Hereinafter Thode]

be substantially affected by the outcome of the proceeding."

There are actually two questions here; what, in this context, is an "interest;" and under what circumstances could it be "substantially affected?" Read literally, Section 455, as amended, says that *any* interest whatsoever that a judge may have must be considered under this test. For instance, it is hoped a generalized interest in an ordered society is promoted by every decision a judge renders. A judge is promoting his own interest, as well as that of society, when he renders a decision promotive of the good health of the body politic: he who breaches a contract pays damages to the party damaged; he who violates the criminal law is punished; he who is wronged by the government obtains redress. Such results are all in the judge's interest that he live in a society governed by laws, but are these the types of interests that the Code and amended statute require to be considered on the issue of disqualification? Indeed, it would be absurd to think that an anarchist party to a suit has a legal ground to complain of the judge's "interest" being directly counter to that of the anarchist—one who seeks an unordered society.

If judges are to have a sure guide rather than an infinitely expandable concept of "interests" they certainly cannot be held to the literal language of the law.

The question of when an interest is "substantially affected" is equally troublesome. To dramatize the problem assume a judge had a direct personal pecuniary interest of one penny in a case before him. Further assume that the outcome of the case would determine whether or not the judge would get that penny. Clearly the interest is of the type customarily scrutinized on the issue of disqualification and clearly this interest would be, under the premise, substantially, indeed wholly, affected by the outcome of the proceeding. But logically this cannot be what the drafters of the Code and Congress had in mind.

The Court is in a quandary with respect to what guidelines are to be followed in fashioning sound and proper limitations to the phrase "any other interest that could be substantially affected." The briefs of all counsel have been reviewed, but they fail to address the issue to the Court's satisfaction.

Third party defendant Stone and Webster summarily dismissed this test with the bald statement that "it is equivalent to the standard enunciated in 28 U.S.C. § 455 prior to the amendment, and it clearly does not require disqualification in this case."[18] No authority is cited to support this statement and no effort is made to reckon with the drastic literal difference between a "substantial interest" and "*any* . . . interest that could be *substantially* affected." The shift of the position of the word "substantial" is ignored by Stone and Webster.

Plaintiff Vepco disposed of this issue by citing Mr. Justice Rehnquist's *Memorandum on Motion to Recuse* in *Laird v. Tatum*, 409 U.S. 824, 825, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972). Vepco represented that Rehnquist "stated that he did not read the provisions of the Code of Judicial Conduct 'as being *materially* different from the standards enunciated in the Congressional statute. . . .' (emphasis added) *Laird v. Tatum*, 409 U.S. 824, 825 [93 S.Ct. 7, 34 L.Ed.2d 50] (1972), referring to the version of § 455 in effect prior to the 1974 amendment."[19] The Justice's broad dicta, stated with reference to an entirely different issue, does not convince the Court that the Justice analyzed the test in question, considered the related problems discussed herein and concluded that this test is the same as the former "substantial interest" test. Understandably, this weak attempt by Vepco to tie the new test to the "substantial interest" test also leaves the Court unconvinced.

---

**18.** Note 9 *supra* at p. 11.

**19.** Note 11 *supra* at p. 18.

Surprisingly, defendant Sun Ship agrees with the interpretation of the new test advanced by plaintiff and third party defendant. With regard thereto, defendant's brief states "where the interest is less direct, that is, where the judge has an interest which is only 'affected' by the outcome, the 'substantial' language of the older test is retained, as is necessarily, the *de minimis* test of *Tumey*."[20] No authority is given.

Since there was at least agreement amongst counsel, though unsupported, as to the meaning of the new test, the Court acquiesced in this undisputed representation of the law in brief and in oral argument and ruled from the bench in this context.

But in attempting to put the ruling from the bench into memorandum form, the Court faced the dilemma of fashioning guidelines for the test that square the Court's common sense opinion about the interest herein with the wording of the test elaborated on in the foregoing paragraphs.

The amendment having been enacted less than two years ago, there is a dearth of interpretive cases. However, the legislative history offers some insight.

The congressional committee reports and hearings do not focus on the particular language the Court is concerned with but they at least reflect the mood which ushered in the changes and the general purpose sought to be realized. It is clear from the reports and hearings that the enactment of the amendment reflected a conscious decision to eliminate the "substantial interest" test of the former section 455.[21] This would appear to discredit the mutual contentions of counsel that

the "any other interest" test is a mere continuation of the "substantial interest" test. Further, Congress stated that its purpose was to "*broaden and clarify the grounds for judicial disqualification.*"[22] (emphasis added) House Report No. 93-1453 notes that "the language . . . has the effect of removing the so called 'duty to sit' which has become a gloss on the . . . [former] statute."[23] Justice Traynor, who spoke at the hearings on the amended statute, said that it "set forth a *minimum standard* applicable to all areas until such time as it is feasible to prescribe a higher standard for all areas."[24] (emphasis added) John P. Frank, Esquire, a speaker at the hearings and an attorney who has written a number of articles on disqualification, expressed this view:

> I think it fair to say so far as I know there is no longer a soul in the United States who doubts that it would be better to take judges out if they have *any* interest at all. The question of experimenting with more or less, as Chief Justice Traynor has said, so clearly depends upon the economic perspective of the person making the judgment that it is a decision better not presented.[25]

 Clearly the above passages at least indicate that the "any other interest" test should not be narrowly construed as to the type and extent of interest which requires disqualification nor as to the degree to which the interest must be affected by the outcome of the proceeding. But the Court is still not convinced that the amendment's language should be literally taken without limitation.

---

**20.** Defendant's Memorandum in Support of Motion for Disqualification, p. 18.

**21.** H.R.Rep. No. 93–1453, 93rd Cong., 2nd Sess. (1974), U.S.Code Cong. & Admin.News, p. 6351; Hearings on S. 1064 before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 93rd Cong., 2nd Sess., sec. 39 (1974). *See also,* Thode, at 65.

**22.** H.R.Rep. No. 93–1453, 93rd Cong., 2nd Sess. (1974), U.S.Code Cong. & Admin.News, p. 6351.

**23.** *Id.*

**24.** Hearings on S. 1064 before the Subcomm. on Courts, and the Administration of Justice of the House Comm. on the Judiciary, 93rd Cong., 2nd Sess., sec. 39 at 6 (1974).

**25.** *Id.* at 13.

House Report No. 93–1453 states:

The purpose of the amended bill is to amend section 455 of Title 28, United States Code, by making the statutory grounds for disqualification of a judge in a particular case conform generally with the recently adopted Canon of the Code of Judicial Conduct which relates to disqualification of judges for bias, prejudice or conflict of interest. . . . . Much of the history surrounding and the intent of the language employed in this bill derives from the action of the ABA committee . . . .[26]

Thus, authoritative significance is added to what can be gleaned from the commentary and notes of the Code committee of the ABA as to their purpose in framing the "any other interest" test.[27]

The *Reporter's Notes to the ABA Code of Judicial Conduct* indicates a limitation on what is meant by "any other interest." Such an interest is construed to be limited to an economic interest.[28] Wright's treatise on *Federal Practice and Procedure* cites the Reporter's Notes arguing in favor of this interpretation:

There is some indication that the draftsman of the Code of Judicial Conduct from which the 1974 amendments of section 455 were taken, was thinking of economic interests in the provision involving "any other interest which could be substantially affected by the outcome of the proceeding." This should be the interpretation of the provision . . . .[29]

The Reporter's notes further modifies the provision in question:

Another interest that falls into this category is a judge's interest as a ratepayer to a party involved in proceedings before him. Examples include a judge as a customer of a public or private utility company, as a taxpayer, or as a premium payer to a stock insurance company. Although being a ratepayer does not involve "ownership of a legal or equitable interest," in the party to whom the judge made such payments, the Committee concluded that at some point a relationship to a party as a utility customer, taxpayer, or premium payer should disqualify a judge. The test is that a judge should disqualify himself if the outcome of the proceeding could substantially affect his interest as a customer or the utility, as a taxpayer, or as a premium payer.[30]

The Reporter represents that the above passage reflects the committee's view of the applicability of the "any other interest" test to the precise situation with which the Court is presently confronted. The Committee reportedly concluded "that *at some point*," a judge's economic interest as a ratepayer to a

---

**26.** H.R.Rep. No. 93–1453, 93rd Cong., 2nd Sess. (1974), U.S.Code Cong. & Admin.News, pp. 6351, 6356.

**27.** It is important to note a basic distinction between the "any other interest" test of the statute and the reference to this language in the Code of Judicial Conduct. The statute requires a judge to recuse himself without further consideration if he has such an interest. Note 3 *supra*. The Code, on the other hand uses the "any other interest" language to denote a factor a judge must consider in determining whether his impartiality might be reasonably questioned. Note 2 *supra*. Unlike the statute, the Code does not require recusal solely because a judge has an interest that could be substantially affected unless he further finds that his interest is such that a reasonable man may question his impartiality. Hence, the statute imposes a more strict standard upon a judge in that he must recuse himself if such an interest exist even though no one in his right mind would even consider that it might affect the judge's behavior on the bench. Nevertheless, the intent of the drafters of the Code, insofar as the meaning of the phrase "any other interest that could be substantially affected" is concerned, is of no less importance in understanding the meaning of that same phrase in the statute. Clearly the Code and the statute are talking about the same animal; it is the consequence of the existence of that animal that is different.

**28.** Thode, at p. 66.

**29.** Wright, Federal Practice and Procedure § 3547 at p. 366 (1975).

**30.** Thode, at pp. 66–67.

utility company should necessitate his disqualification from a case, which might affect rates. The quoted passage shows that there is some qualification on what is considered to be "any [economic] interest" which could be "substantially affected." But the language is not clear. Is the Reporter saying that such an interest, whether slight or great, direct or remote, may require disqualification depending solely on whether it is "substantially affected?" Or is he saying that under certain circumstances the interest itself, though substantially affected, would be so minimal that disqualification under the "any other interest" test would not be warranted?

The Reporter confuses the situation further by stating that the Code "test is that a judge should disqualify himself if the outcome of the proceeding could substantially affect his interest as a customer of a utility . . ." without mention that under the Code this alone does not require disqualification. It is only a factor to be considered in the broader issue of whether a judge's impartiality might reasonably be questioned.

Frankly, the Court cannot decipher the intent of the Committee as to what are the operative words of the new test, how those words operate and indeed what are the necessary consequences of their operation. This Court's resolution of the sometimes conflicting language, the comments thereon, the testimony at the committee hearings, and the treatises relating to the issue lead to the supposition that "at some point" relates to the substantiality of the interest. The Court nevertheless concludes that, regardless of its uncertainty as to how the Committee may have applied the new test to conclude that "at some point a relation to a party as a utility customer . . . should disqualify a judge," the Court is at least certain that its relationship to the utility herein would fall beyond the "point" at which the Committee reportedly determined recusal is required.

The Court has already mentioned that by the express language of the amendment, this case is not subject to its provi-sions because the suit was filed a month prior to the effective date of the amendment. However, the legislative history demonstrates that the amendment is reflective of the existing consensus as to the standards applicable to this issue. The amendment is said to reflect the views of legal scholars, the Bar, the Judiciary and, assuredly, the Congress. The Court opines that, although not legally bound by the amendment, it cannot ignore this consensus in determining from an ethical standpoint whether or not it is proper to stay with the case.

The simultaneous existence of the Code of Judicial Conduct, which standards are more strict than that of the unamended Section 455, evidences that the legal considerations are not exclusive on the issue of disqualification. Justice Traynor, in reference to the intent behind the amended and stricter version of Section 455, stated that it represents only a "minimum standard." *See* text at p. 331. Indeed, this Court has an independent ethical responsibility to disqualify itself from presiding over any case where the Court is of the opinion that it would be improper to sit. Thus, this Court *must* recuse itself if required by the applicable law; it *may* recuse itself if it feels ethically obligated to do so for some reason outside, but not in derogation of the law on point.

As the Court has already noted, it does not find that it *must* employ the mandates of the Code of Judicial Conduct since there is federal law on point. However, this does not mean that the Code is without import. If there be any related ethical questions which are not disposed of by the relevant statute, then the Court should look to the Code for guidelines in the exercise of its discretion to resolve those questions. Such a question is present in this case, the answer of which led the Court to subject itself to the "any other interest" test even though it was not legally obligated to do so. The question is embodied in Canon 2 of the Code which states that "a judge should avoid impropriety and the appearance of impropriety." The Court

does not believe that sitting, with an interest such as the one herein, is in itself an impropriety or gives the appearance of impropriety. But this Court concludes that it would be *improper* to stay with this case in the face of a consensus of legal and judicial opinion that sitting with such an interest does require recusal. In this sense there is an impropriety or at least the appearance thereof. Even though this Court is critical of the language of the test which is based upon the above consensus and is critical of the consensus itself, it nevertheless feels ethically compelled to respect the generally accepted and congressionally approved view, at least in the absence of alternatives from higher authority. Although the Court is of the firm conviction that whatever interest it may have in the outcome of this law suit will not affect its objectivity in rendering a judgment strictly in accordance with the law, the Court, if err it must, wants to err on the side of the consensus as articulated in the language of the amended statute.

The Court is compelled to add that the amendment, intended to remove uncertainty, has not accomplished its purpose so far as this Court is concerned. The commentators' remarks concerning the amendment have served to confuse rather than clarify. The potential prejudice to utilities and similar business concerns whose services are shared by the general public which would result from the literal application of the statute dealt with herein is incalculable. The efficient administration of justice would be severely hampered if judges are forced to engage in musical chairs in order to insure the attainment of a standard which, on its face, exacts a level of compliance that ignores the realities of human interaction.

As indicated, the Court entertains grave concern about the consequence of its holding. The Court recognizes that mandamus may lie. If the decision rendered herein is not in accordance with the intent of Congress in enacting § 455, much time, expense and effort will have been needlessly wasted while another "qualified" judge can familiarize himself with the volumes of pleadings and documents which this case has already generated.

Viewing this decision as involving significant legal issues as to which there is substantial ground for difference of opinion, the resolution of which may materially advance the ultimate termination of the litigation, the Court will certify this decision for immediate appeal to the Court above, in accordance with 28 U.S.C. § 1292(b).

An appropriate order shall issue.