Richard MADSEN and Nancy Madsen, his wife, for themselves and all others similarly situated, Plaintiffs and Appellants,

v.

PRUDENTIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant and Appellee.

No. 860148.

Supreme Court of Utah.

Dec. 30, 1988.

Robert J. DeBry, Salt Lake City, for plaintiffs and appellants.

Joseph J. Palmer, Reid E. Lewis, Salt Lake City, for defendant and appellee.

STEWART, Justice:

Plaintiffs Richard and Nancy Madsen appeal a district court order entered by Judge Philip Fishler which disqualified Judge Kenneth Rigtrup after he had presided over a trial in this case and had orally announced his ruling but before he had entered formal findings of fact, conclusions of law, and final judgment. Judge Fishler ruled that Judge Rigtrup had no actual bias, but did have an appearance of bias and voided the trial and all prior orders entered by Judge Rigtrup in the case.

This appeal is yet another installment in the protracted history of this case, which started in 1975 and has already been before this Court once, *Madsen v. Prudential Fed. Sav. & Loan Ass'n*, 558 P.2d 1337 (Utah 1977), and before a federal appellate court once, *Madsen v. Prudential Fed. Sav. & Loan Ass'n*, 635 F.2d 797 (10th Cir.1980), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The facts which gave rise to this litigation are reported in detail in those opinions. 558 P.2d at 1338–39; 635 F.2d at 799–800.

Plaintiffs are representatives of a certified class of borrowers whose trust deeds with Prudential Federal Savings and Loan Association (hereafter "Prudential") contained language identical to that contained in the Madsens' trust deed. In 1984, this action was assigned to Third District Court

Judge Kenneth Rigtrup who had been assigned to four other similar cases.[1] Prudential appeared as amicus curiae in each of the other actions.

The issue here was whether a financial institution which loaned money to the plaintiffs on a first trust deed is obligated to pay interest to the plaintiffs on monthly budget payments for property taxes and insurance that are paid with the monthly mortgage payments. In a bench trial in September 1985, the Madsens and Prudential tried the limited issue of whether Prudential made any profit on the budget payments it collected from the Madsens. At the close of the trial, Judge Rigtrup ruled from the bench. Just prior to his ruling, the following exchange occurred between Judge Rigtrup and counsel for the parties:

THE COURT: ... I'll share the benefits of my decision with you at this point.

... I'll expose my biases and my prejudices and be very frank with you.

I think there are some substantial kinds of policy things that have really caused me great trouble and trauma. As I've indicated earlier, and no objection was interposed, I was a customer of Prudential Federal Savings & Loan Association and paid without default for 25 years at four and three-quarters per cent, ... and I computed that out and I thought, why, those robbers, they are charging me twice what I'm borrowing from them, and that's unfair.

As I get older and more sophisticated I—

MR. PALMER [Attorney for Prudential]: Your Honor, I hate to interrupt, but I need to make the point that this is news to me, that you had been a customer of Prudential.

THE COURT: I indicated that on several occasions.

MR. PALMER: I beg the Court's pardon, but that is news to me. I don't

1. *Roger Hal Read and Elizabeth W. Read,* for themselves and all others similarly situated *v. American Equity Corporation,* for itself and all others similarly situated, district court No. C–244219 (filed August 11, 1977). *James W. Petty and Mary E. Petty,* for themselves and all others similarly situated *v. Western Savings and Loan Co.,* district court No. C–79–700 (dismissed July

19, 1983). *Russell R. Everill and Helen B. Everill,* for themselves and all others similarly situated *v. Western Savings and Loan Co.,* district court No. C–79–701 (dismissed July 19, 1983). *Ernest H. Dixon and Lori Ann P. Dixon,* for themselves and all others similarly situated *v. United Savings and Loan Ass'n,* district court No. C–79–1105 (filed February 16, 1979).

recall that at all—if anybody else does— recall you telling me that, and I—

THE COURT: I indicated that in these earlier meetings that I had paid my loan off at some point, and I'd had a loan with Prudential Federal Savings.

MR. PALMER: Perhaps the Court is thinking of conferences with other counsel. The reason I make the point is—

THE COURT: My earlier conferences were not with the two of you in this case, they were with Mr. Billings, with Mr. Ashton, with you, with Mr. Giauque, Mr. McDonough, with respect to whoever he represents. It was Mr. Giauque or someone from that office. They were a corrective kind of a deal.

MR. PALMER: In any event, I stand to raise the point now that it is news to us. I believe it—I take it that the Court did not feel that it had any prejudice because of that.

THE COURT: No.

MR. PALMER: All right.

THE COURT: I have a recollection that somewhere along the line I did make that disclosure. I don't know how you could be part of the community and be a homeowner and not have borrowed from someone. And so I think I make it very clear in one of those collective kinds of meetings that my loan had been with Prudential Federal.

At any rate, it's a fact, and it was something that I never tried to hide or have hid from anyone. So there's no sense of covering up. I guess if that creates error, it creates error. But so be it. I have a recollection that I did expose it, and whether you were there or Mr. Lewis or anyone else, I don't know. I did make the disclosure early on.

MR. DeBRY [Attorney for the Madsens]: I do recall some conversations, I think, off the record, of that effect, and I honestly don't recall who was present. But it was a comment that was made from time to time.

MR. PALMER: Could I inquire of the Court when the loan was paid off?

THE COURT: Probably two years ago. I'm not sure at what point in the discussions I indicated that, but I'm sure that in the presence of the collective group that I indicated that I had been a borrower of Prudential Federal Savings.

MR. PALMER: No prejudice arose in the Court's mind because of the fact that we collected a mortgage escrow from you?

THE COURT: No.

MR. PALMER: Okay. I can't do anything else but ask.

THE COURT: That's what I've been trying to tell you. That was the intention.

MR. PALMER: I make the point because I didn't want to go on and let the Court note—

THE COURT: I think I've made general comments throughout that I have cussed financial institutions, and customers do simply because they see inherent injustice about that. And my perspective today, after 23 years has passed, has become much, much different at the end of the 23 years. Far before that I could see the cost of money was markedly greater, and that I would be a damn fool to prepay. So I paid faithfully every month for 25 years, and not a day sooner or a day later. And I'm just commenting generally in terms of unjust or whatever. The tension is between that to be gained and that to be lost, I suppose, in my eyes. And I have a feeling that class actions are a form of champerty and maintenance in that the one that substantially gains is the lawyer or the expert. Mr. Madsen stands to gain little, except he has struck a blow for freedom, I suppose, in the form that the consumer has achieved balance.

Be seated, Mr. DeBry.

MR. DeBRY: I want to make an objection on the record. I really must.

THE COURT: Well, sit down.

MR. DeBRY: Before you give your decision, I must make a comment, because I know the Court is being candid and this has been a long struggle, and Prudential says they are almost broke before this. And you say maybe DeBry will make some money, but I haven't yet. But I really must interpose an objection at this

point. If the Court harbors this type of personal bias with respect to—

THE COURT: I'm just—

MR. DeBRY: —class actions.

THE COURT: I'm just telling you about the tension.

MR. DeBRY: I must object to the Court's sitting on this case if you have that kind of bias.

THE COURT: I'm just telling you why I'm getting to my ruling and how I'm getting to my ruling and being open and candid with both of you. But that's a built-in problem with class actions. They have achieved a beneficial result. The difficult[y] I am locked into is that I have got to follow the law of the case. I have got the Supreme Court that's telling me what to do. . . .

. . . .

MR. DeBRY: Your Honor—

THE COURT: You can take exceptions after I get done. I'm trying to—

MR. DeBRY: I might note that I do have an exception to take at this time before you give your verdict in this matter.

THE COURT: I haven't given a verdict.

Prudential did not object during the course of the exchange. Judge Rigtrup rendered his decision in favor of the Madsens and awarded them damages of $134.70.

After the ruling, Judge Rigtrup asked if either side wished to take any exceptions. Prudential's attorney stated only that an appeal was anticipated before any class issues were addressed. However, no spe-cific objection to Judge Rigtrup's qualifications was voiced.

Thirty-nine days after Judge Rigtrup announced his decision, Prudential raised its first formal objection to the judge's qualifications to hear the case by filing a motion for disqualification under Rule 63(b) of the Utah Rules of Civil Procedure.[2] The motion was assigned to the then-presiding judge of the Third District, the Honorable Philip Fishler. Judge Fishler held several hearings on the motion and considered testimony, portions of the trial transcript, affidavits, and memoranda in reaching his decision. Judge Fishler ruled that Prudential's motion was timely, that the possibility existed that Judge Rigtrup may have a financial interest in the outcome of the case, and that Judge Rigtrup's impartiality might reasonably be questioned. Judge Fishler expressly found no actual bias on the part of Judge Rigtrup, but ordered him disqualified solely on the appearance of bias. After the case was assigned to another judge for retrial, we granted plaintiffs' request for an interlocutory appeal of Judge Fishler's order.

## I.

The Madsens contend that Prudential waived its objections to Judge Rigtrup's qualifications by failing to make a timely objection at the time of the judge's exchange with counsel, thereby giving Prudential the advantage of waiting to see if the ruling was favorable and, if not, of moving to disqualify. In addition, Pruden-

2. Rule 63(b) reads:

(b) *Disqualification.* Whenever a party to any action or proceeding, civil or criminal, or his attorney shall make and file an affidavit that the judge before whom such action or proceeding is to be tried or heard has a bias or prejudice, either against such party or his attorney or in favor of any opposite party to the suit, such judge shall proceed no further therein, except to call in another judge to hear and determine the matter.

Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed as soon as practicable after the case has been assigned or such bias or prejudice is known. If the judge against whom the affidavit is directed ques-tions the sufficiency of the affidavit, he shall enter an order directing that a copy thereof be forthwith certified to another judge (naming him) of the same court or of a court of like jurisdiction, which judge shall then pass upon the legal sufficiency of the affidavit. If the judge against whom the affidavit is directed does not question the legal sufficiency of the affidavit, or if the judge to whom the affidavit is certified finds that it is legally sufficient, another judge must be called in to try the case or determine the matter in question. No party shall be entitled in any case to file more than one affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith.

tial waited an extended period to file its motion to disqualify.

■ While a motion to disqualify a judge should not be undertaken lightly, it must be made promptly. A party who has a reasonable basis for moving to disqualify a judge may not delay in the hope of first obtaining a favorable ruling and then complain only if the result is unfavorable. Not only is such a tactic unfair, but it may evidence a belief that the judge is not in fact biased. Furthermore, delay imposes unnecessary disruption on both the judicial system and litigants. A disqualification proceeding is a collateral attack on the substantive action, it disrupts orderly litigation, and it necessarily results in significant additional costs to the parties. Accordingly, a party must move with dispatch once a basis for disqualification is discovered. *See Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497, 508–10 (D.S.C. 1975); *Hunnicutt v. Hunnicutt*, 248 Ga. 516, 518, 283 S.E.2d 891, 893 (1981). *See generally* L. Abramson, *Judicial Disqualification Under Canon 3C of the Code of Judicial Conduct* 11–12 (1986) [hereinafter L. Abramson, *Judicial Disqualification* ].

Timeliness is essential in filing a motion to disqualify.[3] In Utah, disqualification motions in civil proceedings are governed by Rule 63(b) of the Utah Rules of Civil Procedure (set out in footnote 2). That rule requires that a disqualification motion "shall be filed as soon as practicable after the case has been assigned or such bias or prejudice is known." The issue in this case is whether Prudential's failure to raise the issue during the colloquy with the judge before the ruling, its failure to object after the oral ruling was made when objections were invited by Judge Rigtrup, and Prudential's delay of thirty-nine days after the trial to file its disqualification motion meet the "as soon as practicable" requirement of Rule 63(b).

Federal cases require that motions to disqualify must be made as soon as the facts which form the basis for the disqualification become known. *See United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986) ("a motion for recusal filed weeks after the conclusion of a trial is presumptively untimely absent a showing of good cause for its tardiness"); *Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985) (motion to disqualify filed one year after complaint and after adverse rulings of trial court was untimely); *Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1437 (1982) (delay of sixteen months after grounds for disqualification arose made motion to disqualify untimely); *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977) ("The law is well settled that one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification."); *Satterfield v. Edenton–Chowan Bd. of Educ.*, 530 F.2d 567, 574 (4th Cir. 1975) ("One must raise the disqualification of the trier, whether he be a judge, an administrator, or an arbitrator, at the earliest moment after knowledge of the facts."); *Davis v. Cities Serv. Oil Co.*, 420 F.2d 1278, 1282 (10th Cir.1970) (motion to disqualify filed a month after the case was decided against movants is too late); *Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497, 510 (D.S.C.1975) ("a recusal motion must be made at counsel's *first opportunity after discovery* of the disqualifying facts" (emphasis in original)).

---

3. Some jurisdictions impose specific time limitations on some disqualification motions. *See, e.g.,* 28 U.S.C. § 144 (1982) (affidavit of bias must be filed not less than ten days before the beginning of the term at which the proceeding is to be heard); Alaska Stat. § 22.20.022(c) (1984) (affidavit for peremptory removal of judge must be filed within 5 days after the case is at issue or within 5 days after the issue is assigned to a judge); Me.Rev.Stat.Ann. title 14, § 1103 (1980 & Supp.1988) (petition for change of judge must be filed within ten days after service of complaint or other application for which equitable relief is sought); Minn.R.Civ.P. 63.03 (notice to remove judge must be filed within ten days after a party receives notice of which judge is presiding at the trial or hearing, but no later than commencement of the trial or hearing).

State courts have also imposed stringent timeliness requirements. *See, e.g., Wakefield v. Stevens,* 249 Ga. 254, 255, 290 S.E. 2d 58, 60 (1982) (motion to disqualify untimely if not "filed promptly and without delay, at the first opportunity after ... [learning] of the grounds for disqualification" (quoting *State v. Fleming,* 245 Ga. 700, 705, 267 S.E.2d 207, 210 (1980) (Hill, J., concurring))); *Carpenter v. State,* 223 Kan. 523, 525, 575 P.2d 26, 29 (1978) (affidavit of prejudice should be filed as soon as a party "becomes aware of the facts giving rise to the challenge"). The rule is stated in 46 Am.Jur.2d *Judges* § 202, at 225–26 (1969):

> It is a well-recognized rule that an application for the disqualification of a trial judge must be filed at the earliest opportunity. The courts generally apply this rule with strictness against a party who, having knowledge of facts constituting a disqualification, does not seek to disqualify the judge until an unfavorable ruling has been made.

(Footnotes omitted).

■ While the Utah rule imposes no specific time limitation on the filing of a motion for disqualification, timeliness is still essential. To be timely, a motion to disqualify should be filed at counsel's first opportunity after learning of the disqualifying facts. Only if good cause for a delay is demonstrated in the motion seeking disqualification should a delinquent motion even be considered. *See Davis,* 420 F.2d at 1282; *Duplan Corp.,* 400 F.Supp. at 509–10.

■ Prudential's motion to disqualify Judge Rigtrup was not timely. Prudential claims that its first notice of bias on Judge Rigtrup's part occurred in his statement prior to announcing his ruling. However, Prudential's attorney did not object to the judge's continued participation in the case, as did opposing counsel, nor did Prudential ask for a continuance to consider disqualification. Prudential's attorney merely responded "that this is news to me" and then, after further dialogue with the judge, allowed the proceedings to continue without objection. By contrast, the *Madsens'* counsel did object to Judge Rigtrup's continuation as trial judge.

Prudential claims that Judge Rigtrup seemed determined to quell all interruptions as evidenced by his repeated admonition to plaintiffs' counsel to "sit down." Nevertheless, the record set out above demonstrates that plaintiffs' counsel was able to object. Beyond that, moments after Judge Rigtrup had delivered his oral ruling, he specifically afforded Prudential another opportunity to object: "Do you desire to make any further exceptions...." Prudential's attorney responded: "Well, what I'm suggesting is that I expect that there will be an appeal before we get into the class issues, and I would anticipate findings and a judgment be presently entered in favor of Mr. Madsen." However, no mention was made of "recusal" or "disqualification."

Prudential asserts that it did object at trial, but our review of the record discloses no objection. On the contrary, it discloses Prudential's apparent acquiescence in Judge Rigtrup's rendering a decision.

Finally, Prudential waited thirty-nine days after the ruling to file a formal motion to disqualify. Prudential argues that it had good cause for the delay. It contends that the lengthy delay was necessary to review personal notes, discuss the matter with other counsel in related cases, discuss the matter with Prudential's officers, and order, receive, and review a partial transcript. However, the review of the attorney's notes and the discussions with others should have consumed no more than a day or two. We doubt that the transcript was essential; in any event, all the facts relating to disqualification were known to Prudential's attorney at the close of the proceedings and an affidavit of prejudice and motion to disqualify could have been prepared with only a knowledge of those facts. We see no reason why the affidavit of prejudice and motion to disqualify should have taken more than ten days to prepare and file, especially since this case was at an advanced stage. Prudential failed to act with sufficient promptness in a

matter which, by its very nature, requires promptness.

In sum, Prudential's motion to disqualify was not filed "as soon as practicable after ... bias or prejudice is known," as required by Rule 63(b). Indeed, for all that appears, Prudential was not convinced at the time of the ruling that Judge Rigtrup should have recused himself.

## II.

Given the importance of impartiality and the duty of a judge to recuse him- or herself *sua sponte* when necessary, we next address the issue of whether Judge Rigtrup should have disqualified himself on his own motion. In this context, we analyze the issues of apparent and actual bias raised by Prudential and addressed by Judge Fishler in his ruling.

Standards for judicial disqualification are established by statute and the Code of Judicial Conduct, which this Court adopted in 1974 and which is patterned after the ABA Code of Judicial Conduct of 1972. Utah Code Ann. § 78-7-1 (1987) provides for disqualification if the judge is a party, has an interest in a case, is related to either party, or has been an attorney for either party in the action.[4] The statute allows a waiver of disqualification if both parties consent, a point not at issue here.

Canon 3 C of the Code of Judicial Conduct (hereafter "Code") is more comprehensive than the statute in prescribing instanc-

es when judicial disqualification is warranted. In this case, the parties have based their arguments for and against disqualification on the Code. For this reason, we address the disqualification issues in the context of the Code.

The Madsens contend that the Code is an ethical code only and that a violation of the Code should not result in the invalidation of all of a judge's previous rulings. They argue that a violation should result only in discipline of the judge and not in a penalty to an innocent party who may have expended large amounts of time and money only to have a large part of the lawsuit invalidated because of a judicial disqualification. While most of the Code is aimed exclusively at the regulation of judicial behavior, Canon 3 C not only regulates judicial conduct, but it also seeks to avoid unfairness by insuring each litigant an impartial judge. Because we conclude that disqualification of the trial judge was not appropriate, we do not address further the issue of retroactive invalidation of a trial judge's rulings.

Prudential argues that Judge Fishler was correct in disqualifying Judge Rigtrup because Judge Rigtrup had personal knowledge of disputed evidentiary facts, displayed bias against Prudential, and had a financial interest in the outcome of the case. These allegations impute actual bias, but Judge Fishler specifically found no actual bias.[5] Moreover, as shown below,

---

**4.** Utah Code Ann. § 78-7-1 reads in full:
Disqualification for interest or relation to parties.

Except by consent of all parties, no justice, judge or justice of the peace shall sit or act as such in any action or proceeding:
(1) to which he is a party, or in which he is interested.
(2) when he is related to either party by consanguinity or affinity within the third degree, computed according to the rules of the common law.
(3) when he has been attorney or counsel for either party in the action or proceeding.

But the provisions of this section shall not apply to the arrangement of the calendar or the regulation of the order of business, nor to the power of transferring the action or proceeding to some other court.

**5.** Obviously, actual bias need not be found to support disqualification. *See State v. Neeley,*

748 P.2d 1091, 1094 (Utah 1988). An appearance of bias or prejudice is sufficient for disqualification, but even disqualification because of appearance must have some basis in fact and be grounded on more than mere conjecture and speculation. In close cases, disqualification is the favored course of action. However, disqualification is not automatic and the basis for disqualification should be thoroughly examined, especially in cases such as this which are at an advanced stage of the litigation process. *See, e.g., In re Virginia Elec. & Power Co.,* 539 F.2d 357, 364 (4th Cir.1976). As is demonstrated elsewhere in this opinion, close examination of Prudential's allegations against Judge Rigtrup show them to be without merit. Therefore, there was no basis in this case for disqualification.

We note that disqualification due to the appearance of bias or prejudice seems more amenable to prospective application. The purpose

none of Prudential's allegations of bias withstands scrutiny.

### A.

First, Prudential argues that Judge Rigtrup had personal knowledge of disputed evidentiary facts and, thus, violated Canon 3 C(1)(a). The issue before Judge Rigtrup was whether Prudential earned a net profit on the Madsens' budget payments. Prudential claimed a net loss in the handling of such funds. Prudential asserts that it had waived insurance premium payments of certain borrowers, including Judge Rigtrup, in 1977 and gave those borrowers the option of continuing their escrow accounts or discontinuing them altogether in 1979. For that reason, Prudential asserts, the judge had independent knowledge of the disputed issue from which Judge Rigtrup "jumped to the conclusion in his ruling that Prudential could have and would have discontinued the Madsens' reserve, or otherwise changed its handling procedures, rather than lose money in requiring them."

Judge Fishler was not persuaded that Judge Rigtrup had any knowledge concerning the facts in dispute in this case and found that this allegation would not support a claim of bias. Judge Fishler was correct. Although Judge Rigtrup had knowledge of his own dealings with Prudential some six and eight years before the trial, that knowledge did not bear on the issue of whether Prudential made a profit on the budget payment accounts. Prudential cites no record support to the contrary.

### B.

■ Next, Prudential argues that remarks made by Judge Rigtrup just before delivering his ruling evidenced prejudice.

Prudential specifically asserts here, as it did before Judge Fishler, that the remarks made by the judge, including the comment, "I have cussed financial institutions, . . ." revealed a bias that warranted disqualification. Judge Fishler's memorandum decision does not mention this allegation as a basis for his disqualification order.

Concededly, Judge Rigtrup was somewhat less than diplomatic in expressing what his thinking had been many years ago about financial institutions and how his thinking had evolved over the years. Nevertheless, Judge Rigtrup's own remarks in context explain the isolated instances thought by Prudential to show bias. The judge stated:

I think I've made general comments throughout that I have cussed financial institutions, and customers do simply because they see inherent injustice about that. And my perspective today, after 23 years [have] passed, has become much, much different at the end of the 23 years. Far before that I could see the cost of money was markedly greater, and that I would be a damn fool to prepay. So I paid faithfully every month for 25 years, and not a day sooner or a day later. And I'm just commenting generally in terms of unjust or whatever. The tension is between that to be gained and that to be lost, I suppose, in my eyes. And I have a feeling that class actions are a form of champerty and maintenance in that the one that substantially gains is the lawyer or the expert. Mr. Madsen stands to gain little, except he has struck a blow for freedom, I suppose, in the form that the consumer has achieved balance.

Later the judge stated:

The tension is that in terms of the magnitude of the wear, what is to be

of disqualification based on appearance of bias is "to promote public confidence in the judicial system by avoiding even the appearance of partiality." *Health Services Acquisition Corp. v. Liljeberg,* 796 F.2d 796, 800 (5th Cir.1986), *aff'd,* —— U.S. ——, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). In *Liljeberg v. Health Services Acquisition Corp.,* —— U.S. ——, 108 S.Ct. 2194, 2202–03, 100 L.Ed.2d 855 (1988), the United States Supreme Court concluded that disqualifying

facts which a federal district judge should have known but which he had forgotten were sufficient to disqualify the judge under the federal statute. However, the federal statute in question, 28 U.S.C. § 455(a) (1982), requires disqualification for an appearance of bias.

Canon 3 C(1) makes disqualification based on an appearance of bias discretionary ("A judge *should* disqualify himself . . .") (emphasis added).

gained by Mr. Madsen is de minimis. On the other hand, if the Court looks at economic realities, the high cost of money, high cost of labor and high cost of everything else, there is a societal interest in maintaining healthy, vital financial institutions that have the ability to fund building construction, homes, and so forth, in our community. And I simply observe that probably the savings and loan associations have been very instrumental and important in that particular process. I simply make those as an overview statement say to [sic] what has troubled me, and it's trouble[d] me for a long time.

Canon 3 C(1)(a) states that a judge should disqualify himself if he has "personal bias or prejudice concerning a party." Although litigants are entitled to a judge who will hear both sides and decide an issue on the merits of the law and the evidence presented, they are not entitled to a judge whose mind is a clean slate. Each judge brings to the bench the experiences of life, both personal and professional. A lifetime of experiences that have generated a number of general attitudes cannot be left in chambers when a judge takes the bench. Refusing to disqualify himself in *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972), Justice Rehnquist responded to a motion to recuse *nunc pro tunc:*

> Proof that a Justice's mind at the time he joined the Court was a complete *tabula rasa* in the area of constitutional adjudication would be evidence of lack of qualification, not lack of bias.
>
>     . . . .
>
> [N]either the oath, the disqualification statute, nor the practice of the former Justices of this Court guarantees a litigant that each judge will start off from dead center in his willingness or ability to reconcile the opposing arguments of counsel with his understanding of the Constitution and the law.

*Id.* at 835, 838–39, 93 S.Ct. at 14, 15–16 (memorandum opinion of Rehnquist, J.) (emphasis in original). One commentator has stated:

> Supreme Court Justices are strong minded men, and on the general subject matters which come before them, they do have propensities; the course of decision cannot be accounted for in any other way.

J. Frank, *Disqualification of Judges: In Support of the Bayh Bill,* 35 Law & Contemp. Probs. 43, 48 (1970). Obviously, the same is true for all judges. Concerning comments made in court during a case, a commentator stated:

> The traditional judicial view is that if a judge can be disqualified for bias following a comment or ruling during the court proceedings, there is no limit to disqualification motions and there would be a return to "judge shopping." Any judicial comment or ruling gives the appearance of partiality in the broadest sense to the adversely affected party. Suppose a judge who is the trier of fact comments during a hearing that a parent has had the opportunity to improve himself in order to make a home for his child but has made no effort to do so. Can the judge be disqualified for bias and prejudice? Whenever a judge hears any evidence, he develops an attitude which may change as the evidence develops. As long as the judge decides the case only after *all* the evidence is submitted, there appears to be no harm in such a comment. Such judicial comments made before a jury would constitute an improper expression of opinion on the evidence, but those statements made out of their hearing do not require recusal.

L. Abramson, *Judicial Disqualification,* at 23 (emphasis in original) (footnotes omitted). As long as a judge does not allow the "propensities" to obscure the evidence and will decide the case only after all the evidence is heard, then disqualification is generally not warranted by a judge's comments. *See Banks v. Department of Human Resources,* 141 Ga.App. 347, 348–49, 233 S.E.2d 449, 450 (1977), *overruled on other grounds, Chancey v. Department of Human Resources,* 156 Ga.App. 338, 340, 274 S.E.2d 728, 730 (1980).

Judge Rigtrup's remark that he had "cussed financial institutions" was simply a statement about an attitude he had had many years earlier, at a time when he was less knowledgeable about the operations of financial institutions. Viewed in its entirety and in the context in which that statement was made, there is no evidence of disqualifying bias in Judge Rigtrup's remarks. Indeed, it appears that Prudential saw no impropriety at the time the remarks were made, as demonstrated by its failure to object.

### C.

■ Prudential next contends that because Judge Rigtrup was at one time a Prudential borrower, he had a financial interest in the outcome of the case. Prudential claims that the judge is either a "potential" member of the existing plaintiff class or a "potential" member of an alleged plaintiff class which has never been certified. This "potential" membership, Prudential claims, gives Judge Rigtrup sufficient financial interest in the outcome of the case to warrant disqualification. Prudential asserts that amended complaints filed by the Madsens have added new legal theories to the case and have sought enlargement of the plaintiff class. The result, Prudential claims, is a plaintiff class whose boundaries are imprecise.

Notwithstanding Prudential's assertions, this case has a precisely defined plaintiff class, consisting of Prudential borrowers whose trust deeds contain language identical to the Madsens' trust deed. The class was certified by Judge Croft in 1977. Prudential does not argue, and we find nothing in the record to indicate, that Judge Rigtrup is a member of that class. While it is true that the Madsens did seek to enlarge the class, a new plaintiff class has never been certified. Allegations alone do not act to enlarge an existing class.

Judge Fishler held that Judge Rigtrup "*may* therefore *have a financial interest* which would be substantially affected by the outcome of the proceeding as defined under Canon 3C(1)(c)." (Emphasis added.) Judge Fishler erred. Judge Fishler and

both sides on appeal have overlooked a critical point—the meaning of the term "financial interest" in Canon 3 C(3)(c).

Canon 3 C(3)(c) states that "*'financial interest' means ownership* of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party...." (Emphasis added). In other words, without an ownership interest, no financial interest exists.

In *Virginia Elec. & Power Co. v. Sun Shipbldg. & Dry Dock Co.*, 407 F.Supp. 324 (E.D.Va.), *vacated sub nom. on other grounds In re Virginia Elec. & Power Co.*, 539 F.2d 357 (4th Cir.1976), a trial judge was asked to disqualify himself because he was a customer of the plaintiff public utility, and a verdict favorable to the plaintiff could result in a personal benefit to the judge of approximately $100 realized as a reduction in utility rates. The judge stated:

> Clearly, whatever interest the Court may have in the subject matter in controversy, it does not constitute a "financial interest" as defined [by the Code of Judicial Conduct and 28 U.S.C. § 455]. It has "ownership" of no interest—legal or equitable.... [T]he Court actually has "a vague and undefined interest, not ownership, in a credit or accounting adjustment...."

407 F.Supp. at 327. The United States Court of Appeals for the Fourth Circuit reversed on other grounds but stated in its opinion that the trial judge correctly concluded that "he did not 'own' a legal or equitable interest in the subject matter." *In re Virginia Elec. & Power Co.*, 539 F.2d 357, 366 (4th Cir.1976). The appellate court noted that the trial judge's interest was analogous to a "bare expectancy" in property law and concluded that "Judge Warriner 'owned' just what the owner of a bare expectancy has—nothing at all." *Id.* at 367.

Judge Rigtrup also owned nothing. Therefore, he had no financial interest in the case as defined by Canon 3 C(3)(c), and disqualification on this basis was unwarranted.

## D.

■ Finally, while Prudential has not raised the issue, we briefly examine whether Judge Rigtrup's disqualification would be warranted under the portion of Canon 3 C(1)(c) which calls for disqualification when the judge or a close relative has "any other interest that could be substantially affected by the outcome of the proceeding...." The Reporter for the Code of Judicial Conduct interpreted "any other interest" to mean an economic interest. E. Thode, *Reporter's Notes to Code of Judicial Conduct* 63–67 (1973). Unlike the term "financial interest," "any other interest" does not require ownership and includes lesser economic interests. At least one trial judge has disqualified himself after finding that "any other interest" includes the possibility of receiving a $100 rebate on utility payments. *Virginia Elec. & Power Co.*, 407 F.Supp. 324. It could therefore be argued that Judge Rigtrup's potential membership in an alleged class constitutes "any other interest" and requires disqualification.

Although the term "any other interest" is usually confined to economic interests, further definition of the exact types of economic interests which fall under the ambit of the term is difficult.[6]

In any event, the interest must be "substantially affected" to require disqualification. Professor Wright has stated: "The concept [of 'any other interest'] is necessarily an imprecise one. It has been suggested that it should be read 'to depend on the interaction of two variables: the remoteness of the interest and its extent or degree.'" C. Wright, A. Miller, & E. Cooper, 13A *Federal Practice and Procedure* § 3547, at 603 (1984) (footnotes omitted). Another frequently cited article has illustrated the point as follows:

> If the interest strongly resembles a direct interest—for example, stock held in a subsidiary (or parent) of the corporate party—any amount should disqualify,

just as does any stock held in the party itself. As the interest becomes less direct, such as that in an enterprise carrying on business with the party, only if the extent of the interest is itself substantial can the judge's impartiality reasonably be questioned.

Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 Harv.L. Rev. 736, 753 (1973) (footnotes omitted).

Courts which have considered the issue have followed this approach, examining both the nature of the interest and the extent of the interest. In *In re Virginia Elec. and Power Co.*, the Fourth Circuit relied on that approach to hold that a trial judge's interest in a possible rebate on utility payments was a de minimis interest and that disqualification was not required. 539 F.2d at 368. *See also Alaska Oil Co. v. Alaska*, 45 Bankr. 358, 361–62 (D.Alaska 1985).

*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), is similar in significant respects to this case. In *Aetna*, the insurer discovered after an opinion had been issued that a justice of the Alabama Supreme Court who was the author of the per curiam opinion had filed two actions against insurers in state court alleging issues nearly identical to those presented to the court on appeal. One of the suits involved only that justice. The other was a class action in which the class apparently included all members of the Alabama Supreme Court. The United States Supreme Court addressed separately the disqualification issue with respect to the individual justice and the other members of the Alabama court as members of the uncertified class. The Court held that the individual justice should have recused himself because the opinion which he had authored had "the clear and immediate effect of enhancing both the legal status and the settlement value of his own case." 475

---

**6.** For a discussion of the few cases which classify noneconomic interests as "any other interest," see L. Abramson, *Judicial Disqualification*, at 65; C. Wright, A. Miller & E. Cooper, 13A *Federal Practice and Procedure* § 3547, at 605 (1984). *See also Health Services Acquisition*

*Corp. v. Liljeberg*, 796 F.2d 796, 800 n. 1 (5th Cir.1986), *aff'd*, —— U.S. ——, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *Liljeberg v. Health Services Acquisition Corp.*, —— U.S. ——, 108 S.Ct. 2194, 2206, 100 L.Ed.2d 855 (1988).

U.S. at 824, 106 S.Ct. at 1586. However, the Court refused to hold that the other members of the Alabama court should have been disqualified because of their potential status as members of a class of plaintiffs in a class action lawsuit. The United States Supreme Court stated:

> Any interest that they might have had when they passed on the rehearing motion was clearly highly speculative and contingent. At the time, the trial court had not even certified a class, let alone awarded any class relief of a pecuniary nature.... At some point, "[t]he biasing influence ... [will be] too remote and insubstantial...."

475 U.S. at 826, 106 S.Ct. at 1558 (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980)).

In this case, Judge Rigtrup is, at most, a potential member of an alleged class. As such, his position is similar to eight of the nine justices of the Alabama Supreme Court in *Aetna* who might have found themselves class members. Under those circumstances, the United States Supreme Court refused to find in favor of disqualification, and we do likewise here. If any existing certified classes are expanded to include Judge Rigtrup or any new class were certified that included him, Judge Rigtrup would have to disqualify himself from further proceedings. We assume, of course, that he would not undertake to rule on a motion to certify a class or to expand a class if he could thereby become a party by virtue of his ruling.

REVERSED AND REMANDED.

HOWE, Associate C.J., and DURHAM, J., concur.

ZIMMERMAN, J., concurs in the result.

HALL, C.J., does not participate herein.