2006 UT 11

**STATE of Utah, Petitioner,**

v.

**The Honorable Stephen L. HENRIOD, Judge of the Third District Court, Salt Lake County, Respondent.**

**Greg Jonas, Real Party in Interest.**

**No. 20050311.**

Supreme Court of Utah.

Feb. 24, 2006.

---

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Asst. Att'y Gen., John K. Johnson, Salt Lake City, for petitioner.

Brent M. Johnson, Salt Lake City, for respondent.

Joan C. Watt, Steven G. Shapiro, Salt Lake City, for real party in interest.

Martha Pierce, for amicus Office of Guardian ad Litem.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 In this case, the State petitions for extraordinary relief under rule 65B of the Utah Rules of Civil Procedure and rule 19 of the Utah Rules of Appellate Procedure. The State requests that we vacate the district court's order that denied the State's motion to allow a child witness to testify outside the defendant's presence via closed circuit television.[1] The district court reasoned that such testimony violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. The parties disagree over which precedent governs this issue. The State asserts that we should apply *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), while the defendant argues that *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), applies because it abrogated *Craig.* We grant the State's petition and remand.

## BACKGROUND

¶ 2 The State charged Greg Jonas with six counts of aggravated sexual abuse of a child in violation of Utah Code section 76–5–404.1(3)(2004). The alleged victim is his six-year-old daughter. The State, joined by the guardian ad litem, moved the court to allow the child to testify outside the defendant's presence via closed circuit television pursuant to rule 15.5(2), Utah Rules of Criminal Procedure. Rule 15.5(2) provides,

[i]n any case concerning a charge of child abuse or of a sexual offense against a child, the court may order, upon motion of the prosecution and for good cause shown, that the testimony of any witness or victim younger than 14 years of age be taken in a room other than the court room, and be televised by closed circuit equipment to be viewed by the jury in the court room.

Utah R.Crim. P. 15.5(2). The State argued that the rule was satisfied because requiring the child to testify in the physical presence of her alleged abuser would cause "serious emotional and mental strain."

¶ 3 A pre-trial evidentiary hearing was held before the district court. At the hearing, the defendant argued that granting the State's motion would violate the Confrontation Clause. The district court agreed, denying the State's motion "based upon the Sixth Amendment rights of the defendant and the analysis in *Crawford v. Washington.*" According to the district court, *Crawford* rejected the reliability rationale in *Craig.* In *Craig,* the United States Supreme Court held that a child could testify via closed circuit television provided certain findings were made regarding reliability and the impact on the child from testifying in the presence of the defendant. *Maryland v. Craig,* 497 U.S. 836, 851–52, 110 S.Ct. 3157 (1990). Following the district court's ruling, the State filed an extraordinary writ petition under 65B(d) of the Utah Rules of Civil Procedure. This court has jurisdiction pursuant to Utah Code section 78–2–2(2) (2002).

## STANDARD OF REVIEW

¶ 4 Petitions for extraordinary relief are governed by rule 65B of the Utah Rules of Civil Procedure. Under rule 65B, a petitioner who has "no other plain, speedy and adequate remedy" may be eligible for extraordinary relief under any of the grounds listed. Utah R. Civ. P. 65B(a). Here, petitioner seeks relief under rule 65B(d)(2)(A), which provides that "[a] person aggrieved or whose interests are threatened" may petition for and receive relief "where an inferior court ... or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion." *Id.* 65B(d)(1),(2). Accordingly, this court recently held that the appropriate standard of review in a 65B(d) extraordinary writ case is abuse of discretion. *State v. Barrett,* 2005 UT 88, ¶ 26, 127 P.3d 682. This court has explained that a mistake of law "may constitute an abuse of discretion." *Id.*

---

1. *State v. Jonas,* Third District Court No. 031904989 FS.

¶ 5 While a party seeking relief under rule 65B(d) must satisfy the above requirements, we note that the decision to grant relief lies entirely within our discretion. *Id.*

## ANALYSIS

¶ 6 In this case, we must decide whether to grant the State's petition for extraordinary relief and vacate the district court's order denying the State's rule 15.5 motion. Initially, we agree that the State has "no other plain, speedy and adequate remedy." Utah R. Civ. P. 65B(a). The State's right to appeal is governed by Utah Code section 77–18a–1 (Supp.2005). At the time the district judge signed the minute entry, however, section 77–18a–1 (2004) did not provide a means for the State to appeal an interlocutory order denying a rule 15.5 motion.[2] Additionally, the State is an aggrieved party under rule 65B(d) because the ability of the child to testify reliably directly affects the State's ability to prosecute the defendant. Accordingly, we now turn to the issue of whether the district court abused its discretion when it denied the State's motion and determined that the child's closed circuit testimony would violate the Confrontation Clause.

## I. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THAT ALLOWING THE CHILD TO TESTIFY VIA CLOSED CIRCUIT TELEVISION WOULD VIOLATE THE DEFENDANT'S CONFRONTATION CLAUSE RIGHTS

¶ 7 To determine whether the district court abused its discretion, we must consider whether it committed an error of law when it concluded that, under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), allowing the child to testify via closed circuit television would violate the Confrontation Clause of the United States Constitution. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend VI. "[T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford,* 541 U.S. at 50, 124 S.Ct. 1354.

¶ 8 The parties' dispute regarding whether a child's closed circuit testimony violates the Confrontation Clause boils down to an argument over precedent. Specifically, the State argues that *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), applies, while the defendant argues that *Crawford* abrogated *Craig's* reasoning and therefore controls. We will review each case in turn, but first we believe it relevant to discuss *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), a Confrontation Clause case pre-dating both *Craig* and *Crawford.*

¶ 9 In *Coy,* the Supreme Court addressed the placement of a screen between a testifying child and the child's accused abuser pursuant to an Iowa statute presuming trauma to a child witness. 487 U.S. at 1014, 108 S.Ct. 2798. The screen blocked the defendant from the child's sight but allowed the defendant to see the child. *Id.* at 1014–15, 108 S.Ct. 2798. The majority held that the screen violated the Sixth Amendment's guarantee of face-to-face confrontation. *Id.* at 1022, 108 S.Ct. 2798. The Court left open the question of whether there were any exceptions to the face-to-face confrontation guarantee, noting that if there were they would only be allowed "to further an important public policy." *Id.* at 1021, 108 S.Ct. 2798. Justice O'Connor concurred, stating that she would permit the use of a trial procedure that did not require face-to-face

---

2. In 2005, the Legislature amended section 77–18a–1 by adding subsection (4), which provides that in addition to the grounds for appeal specifically listed, "the prosecution may seek discretionary appellate review of any interlocutory order entered before jeopardy attaches." Utah Code Ann. § 77–18a–1 (Supp.2005). This legislation did not become effective until two months after the district judge had signed the minute entry denying the State's rule 15.5 motion, and therefore does not apply to the case before us. *See* Utah Code Ann. § 77–18a–1(2) (2004). Thus, the amended version of this statute does not provide the State with an adequate remedy in this case, although it appears that it will do so in the future.

confrontation if it "[were] necessary to further an important public policy," such as a case-specific finding that the alternative procedure was necessary to protect a child witness. *Id.* at 1025, 108 S.Ct. 2798 (O'Connor, J., concurring).

¶ 10 Two years after *Coy*, the Court decided *Craig*, which the State argues is controlling. The defendant in *Craig* was charged with sexually abusing a six-year-old child. 497 U.S. at 840, 110 S.Ct. 3157. At the time, Maryland had a statute that permitted an alleged child abuse victim to testify and be cross-examined via one-way, closed circuit television if the judge " 'determine[d] that testimony by the child victim in the courtroom [would] result in the child suffering serious emotional distress such that the child [could not] reasonably communicate.' " *Id.* at 841, 110 S.Ct. 3157 (quoting Md.Code Ann., Cts. & Jud. Proc. § 9-102(a)(1)(ii)(1989)). The defendant argued that this procedure violated his rights under the Confrontation Clause, but the district court rejected his contention and allowed the child to testify via closed circuit television. *Id.* at 842, 110 S.Ct. 3157. The jury convicted the defendant on all counts, and the defendant appealed, eventually obtaining certiorari review by the Supreme Court. *Id.* at 843, 110 S.Ct. 3157.

¶ 11 The majority opinion, written by Justice O'Connor, recognized that " 'the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact.' " *Id.* at 844, 110 S.Ct. 3157 (quoting *Coy*, 487 U.S. at 1016, 108 S.Ct. 2798). However, the Court noted it had "never held ... that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Id.* (emphasis in original). The Court stressed that the face-to-face requirement could not "easily be dispensed with," and therefore occasions permitting the use of an alternative procedure would be rare. *Id.* at 850, 110 S.Ct. 3157. An alternative to face-to-face confrontation could satisfy the Sixth Amendment only if it was "necessary to further an important public policy" and "the reliability of the testimony [was] otherwise assured." *Id.* at 850, 110

S.Ct. 3157. The Court deemed a state's interest in protecting the "physical and psychological well-being" of a child to be a public policy compelling enough to outweigh a defendant's Confrontation Clause rights if the state made an adequate, case-specific showing of necessity. *Id.* at 853, 855–56, 110 S.Ct. 3157. Thus, *Craig* held:

> [W]here necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit the use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.

*Id.* at 857, 110 S.Ct. 3157. The Maryland statute satisfied the majority's test because it required a case-specific finding of emotional distress, *id.* at 856, 110 S.Ct. 3157, and preserved "all the other elements of the confrontation right," *id.* at 851, 110 S.Ct. 3157. The Court stated that under the Maryland statute, "[t]he child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies." *Id.* at 851, 110 S.Ct. 3157.

¶ 12 Justice Scalia dissented, arguing that the Constitution guarantees the defendant's right to confront witnesses in all criminal prosecutions, including those involving child witnesses. *Id.* at 861, 870, 110 S.Ct. 3157 (Scalia, J., dissenting). According to the dissent, the constitutional guarantee of confrontation could not be overcome by policy considerations, and any "special" reasons for suspending the face-to-face requirement for child witnesses were matched by "special" reasons for insisting upon them, such as a child's susceptibility to adult coaching and inability to separate fantasy from reality. *Id.* at 861, 868, 110 S.Ct. 3157 (Scalia, J., dissenting).

¶ 13 The Confrontation Clause debate was renewed in *Crawford,* which the defendant claims abrogated *Craig* and therefore controls in this case. The defendant in *Crawford* was charged with stabbing a man who tried to rape the defendant's wife. 541 U.S. at 38, 124 S.Ct. 1354. At trial, the prosecution played a tape-recorded statement describing the stabbing, made by the defendant's wife to police. *Id.* The defendant's wife did not testify at trial because Washington's marital privilege statute precluded the testimony. *Id.* at 40, 124 S.Ct. 1354. The defendant was thus provided with no opportunity for cross-examination. *Id.* at 38, 124 S.Ct. 1354. The State argued that the tape recording should be admitted because it fell within an exception to the hearsay rule. *Id.* at 40, 124 S.Ct. 1354. The trial court agreed and admitted the recording, finding that it contained a trustworthy statement made by an unavailable witness and was therefore admissible under *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[3] *Crawford,* 541 U.S. at 40, 124 S.Ct. 1354. The defendant was convicted and appealed, claiming that admission of the recording violated his right to confrontation. *Id.* at 41, 124 S.Ct. 1354. The Washington Supreme Court affirmed, and the defendant sought certiorari from the Supreme Court. *Id.* at 41–42, 124 S.Ct. 1354.

¶ 14 The Court agreed with the defendant. Overruling *Roberts,* the Court held that where testimonial evidence is at issue, the only "indicum of reliability" able to satisfy the Sixth Amendment is confrontation. *Id.* at 68–69, 100 S.Ct. 2531. In testimonial hearsay cases, this demands "unavailability and a prior opportunity for cross-examination." *Id.* at 68, 100 S.Ct. 2531. While the majority declined to define "testimonial," it noted that at a minimum, it includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and ... police interrogations." *Id.* Notably, the majority never mentioned *Craig.*

¶ 15 Chief Justice Rehnquist and Justice O'Connor concurred in the judgment. The concurrence disagreed with the Court's decision to overrule *Roberts* and its distinction between testimonial and nontestimonial statements. *Id.* at 69–70, 100 S.Ct. 2531 (Rehnquist, C.J., concurring). Morever, the concurrence did not believe the rights of the public should be completely sacrificed to preserve a benefit to the accused, particularly when other truth-finding means, such as cross-examination, were available. *Id.* at 74–75, 100 S.Ct. 2531 (Rehnquist, C.J., concurring). Like the majority, the concurrence did not discuss *Craig.* However, it did cite *Craig* for the proposition that "cross-examination is a tool used to flesh out the truth." *Id.* at 74, 100 S.Ct. 2531 (Rehnquist, C.J., concurring).

¶ 16 We disagree with the conclusion of the district court that *Crawford* abrogated *Craig.* The *Crawford* majority opinion not only failed to explicitly overrule *Craig,* but also failed to even mention it. Moreover, we do not believe *Crawford* implicitly overruled *Craig* because neither the majority nor the concurrence even discussed out-of-court testimony by child witnesses. By its own terms, the *Crawford* holding is limited to testimonial hearsay. 541 U.S. at 68–69, 124 S.Ct. 1354. Testimonial hearsay is significantly different from a child's testimony that is given under oath during trial and simply is transmitted into the courtroom by electronic means. Given the prior debate in *Coy* and *Craig,* it seems unlikely that the Court inadvertently omitted or overlooked this distinction. We are persuaded that either the Court did not believe *Craig* was implicated by the *Crawford* facts and analysis, or it intentionally left the question open. We find support for this interpretation in the concurring vote by Justice O'Connor, who staunchly supported the allowance of non-face-to-face testimony where necessary to protect a child in both the *Coy* and the *Craig* majority opinion.

¶ 17 We also believe that *Craig* is the clearly applicable precedent in the case before us. Whereas *Crawford* dealt solely with the Confrontation Clause implications of the

---

**3.** *Roberts* held that the Confrontation Clause did not bar admission of unavailable witnesses' hearsay statements against criminal defendants if the statements bore "adequate indicia of reliability," evidenced by either a "firmly rooted hearsay exception" or "particularized guarantees of trustworthiness." 448 U.S. at 66, 100 S.Ct. 2531.

admission of testimonial hearsay—in other words, prior out-of-court statements—*Craig* addressed the in-court testimony of an allegedly abused child via closed circuit television. Additionally, the reliability rationale that *Crawford* rejected is substantially different than our rule 15.5 test to determine whether closed circuit testimony is appropriate. *Crawford* rejected the admissibility of prior out-of-court testimonial statements that bore indicia of reliability. *Crawford*, 541 U.S. at 60–62, 124 S.Ct. 1354. Conversely, rule 15.5 conditions the use of closed circuit testimony on a judicial determination that the child witness "will suffer serious emotional or mental strain ... or that the child's testimony will be inherently *unreliable*." Utah R.Crim. P. 15.5(2)(a)(emphasis added).

¶ 18 We are not alone in our reliance on *Craig*. Defendant has not cited any cases that support his argument that *Crawford* overruled *Craig*, and our own review of post-*Crawford* cases has not revealed any case holding that *Crawford* overruled *Craig* or applying *Crawford* to anything other than testimonial hearsay. *See, e.g., United States v. Kappell*, 418 F.3d 550, 554–55 (6th Cir. 2005) (favorably citing both *Craig* and *Crawford* and finding that children's testimony did not violate defendant's confrontation rights, even though testimony took place in a different room, because the defendant acquiesced, and *Crawford* only applied to testimonial hearsay of persons who did not testify at trial); *United States v. Bordeaux*, 400 F.3d 548, 554–57 (8th Cir.2005) (applying *Craig* to hold that the district court's allowance of two-way, closed circuit television did not satisfy *Craig* and was therefore unconstitutional, and applying *Crawford* to child's out-of-court statements to forensic interviewer); *Hammond v. United States*, 880 A.2d 1066, 1099 (D.C.App.2005) (noting that *Crawford* only abrogated *Roberts* where testimonial hearsay statements were concerned, and the *Roberts* reliability test was still viable in other contexts).

¶ 19 Because we believe that *Craig*, not *Crawford*, is controlling, we find that the district court made an error of law, and therefore committed an abuse of discretion, when it held that *Crawford* prevented a child

from testifying via closed circuit television. Thus, the State has satisfied rule 65B's requirements. We now examine whether we should exercise our discretion to grant extraordinary relief in this case.

## II. WE CHOOSE TO EXERCISE OUR DISCRETION TO GRANT EXTRAORDINARY RELIEF

■ ¶ 20 As noted above, the decision to grant extraordinary relief lies within our discretion. *State v. Barrett*, 2005 UT 88, ¶ 24, 127 P.3d 682. When determining whether to grant an extraordinary writ, this court considers multiple factors, including "the egregiousness of the alleged error, the significance of the legal issue presented by the petitioner, [and] the severity of the consequences occasioned by the alleged error." *Id.*

■ ¶ 21 While a party need not show each of the above factors, they are all present in this case. First, the error was egregious because the district court applied an inaccurate constitutional standard in a criminal case. Second, the legal issue is significant, as demonstrated by the ongoing debate in the Supreme Court. Finally, the consequences of denying relief would be severe. The guardian ad litem and the child's therapist have presented evidence that the child will not be able to testify in the defendant's presence, which would significantly affect the State's ability to prosecute the case. We think the child and the State should at least be able to present evidence that the child's closed circuit testimony complies with *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157 (1990). and satisfies the Confrontation Clause. Based on these considerations, we grant the State's request for extraordinary relief and vacate the district court's ruling that the child's closed circuit testimony would violate the Confrontation Clause.

¶ 22 We note that while our grant of extraordinary relief vacates the district court's ruling, this opinion does not hold that the child will actually be able to testify outside of the courtroom. Although we have not addressed them in this opinion, *Craig* established certain requirements that must be satisfied before a child can testify outside of the defendant's presence via closed circuit televi-

sion without violating the Confrontation Clause. *See Maryland v. Craig,* 497 U.S. 836, 850–57, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Because the district court denied the State's rule 15.5 motion, it did not determine whether the *Craig* requirements had been met. We therefore remand to the district court to determine whether rule 15.5 and its application in this case satisfy the *Craig* requirements.

¶ 23 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.