2011 UT App 401

**Iris M. SPAFFORD and Earl S. Spafford, Plaintiffs and Appellants,**

v.

**GRANITE CREDIT UNION, Defendant and Appellee.**

No. 20100086–CA.

Court of Appeals of Utah.

Nov. 25, 2011.

Iris M. Spafford and Earl S. Spafford, Murray, Appellants Pro Se.

Anthony C. Kaye and Matthew L. Moncur, Salt Lake City, for Appellee.

Before Judges VOROS, ROTH, and CHRISTIANSEN.

## MEMORANDUM DECISION

VOROS, Judge:

¶ 1 Plaintiffs Iris M. and Earl S. Spafford appeal a trial court's order granting Defendant Granite Credit Union's (Granite) motion for summary judgment. They raise an array of claims on appeal, central among them that the trial court erred in excluding their expert witness report and striking Earl Spafford's witness affidavit. We affirm.

¶ 2 "In reviewing a grant of summary judgment, we ... view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Sanders v. Leavitt*, 2001 UT 78, ¶ 1 n. 1, 37 P.3d 1052.

¶ 3 The Spaffords allege that on April 4, 2005, Iris Spafford (Iris) was injured in a fall in the parking lot of one of Granite's branches. She was with her husband, Earl Spafford (Earl), who had driven her there. While attempting to step onto the curb, she lost her balance and fell backward toward the drain, hitting her head on the asphalt of the parking lot. The Spaffords' complaint alleged "design and construction defects" and that the parking lot was in a dangerous condition. The Spaffords asserted two causes of action

against Granite: negligence and loss of consortium.[1]

¶ 4 Following a scheduling conference, the first scheduling order was signed by both parties in January 2008. Under it, the Spaffords were to serve their expert witness designations and reports by August 31, 2008. However, a second stipulated scheduling order was entered on July 28, 2008, which extended the date for service of the Spaffords' expert witness designations and reports to December 1, 2008. Third and fourth stipulated scheduling orders were also entered, extending the due date for the Spaffords' expert witness designations and reports to May 15, 2009. The Spaffords did not comply with the May 15, 2009 deadline.

¶ 5 On June 4, 2009, approximately three weeks after the Spaffords' expert witness designations and reports were due, counsel for the Spaffords withdrew. Granite timely served its expert witness disclosure and report on June 12, 2009. On June 29, 2009, the Spaffords filed pro se appearances.[2]

¶ 6 On August 3, 2009, two and a half months after the expiration of the last scheduled due date, the Spaffords served their expert witness disclosure and report. They designated Clarence Kemp as their expert to testify to the matters set forth in Kemp's letter to the Spaffords' former counsel dated December 3, 2006 (the Kemp Letter). Kemp had provided multiple informal disclosures of his written report to Granite. However, the prior disclosures offered no opinion on the cause of Iris Spafford's fall. Granite filed a motion to strike the Spaffords' expert witness disclosure on the ground that it was untimely and that it failed to comply with the requirements of rule 26(a)(3)(B) of the Utah Rules of Civil Procedure. Two days later, Granite moved for summary judgment. Their motion was supported by a report from Granite's expert referring to, and criticizing, the Kemp Letter.

¶ 7 On September 23, 2009, the Spaffords filed an amended expert witness disclosure and a more detailed report from Kemp. Then on October 5, 2009, five months after their expert witness designations and reports were due, the Spaffords moved the trial court to grant them an extension of time until September 23, 2009, to file their expert witness disclosure and report. In addition, in opposition to Granite's motion for summary judgment, the Spaffords submitted the Affidavit of Earl Spafford (the Spafford Affidavit). Granite moved to strike the Spafford Affidavit on the grounds that it was conclusory, that it stated legal conclusions, and that it contained opinions on matters on which lay opinion testimony was inadmissible.

¶ 8 The trial court granted Granite's motion to strike the Spaffords' expert disclosure and report, its motion to strike the Spafford Affidavit, and its motion for summary judgment. The trial court also denied the Spaffords' motion for an enlargement of time.

¶ 9 Following these rulings, the Spaffords filed a motion to disqualify Judge Medley from the case, supported by another affidavit of Earl Spafford (the Affidavit of Prejudice). Granite filed an opposing memorandum. Judge Medley certified the motion to Associate Presiding Judge Paul G. Maughan, who denied the motion based on the "absence of credible evidence of actual bias arising out of Judge Medley's rulings."

¶ 10 First, the Spaffords contend that the trial court erred in denying their motion, filed pursuant to rule 6(b)(2) of the Utah Rules of Civil Procedure, seeking a fifth enlargement of the time to file their expert designations and expert reports.[3] This motion was filed nearly five months after the court-ordered deadline for expert disclosures. "[A]bsent an abuse of discretion, we will affirm the district court's order...." *Stoddard v. Smith*, 2001 UT 47, ¶ 22, 27 P.3d 546.

---

1. Under Utah law, a "spouse's action for loss of consortium ... is derivative from the cause of action existing in behalf of the injured person[] and ... may not exist in cases where the injured person would not have a cause of action." Utah Code Ann. § 30–2–11(5)(a)–(b) (2007).

2. Although not a member of the Utah Bar at the time of this litigation, Earl practiced law in Utah for more than forty years.

3. We have somewhat reordered the Spaffords' claims for analytical clarity.

¶ 11 Rule 6(b) of the Utah Rules of Civil Procedure states that a trial court "may . . . in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Utah R. Civ. P. 6(b). The Spaffords contend on appeal as they did below that their neglect was excusable because their attorney believed that Granite's counsel "had agreed to an open ended, flexible deadline schedule." Granite responds that the trial court acted properly, especially in light of rule 29 of the Utah Rules of Civil Procedure. That rule states, "Unless the court orders otherwise, the parties may by *written stipulation* . . . modify the procedures provided by these rules for disclosure and discovery, except that stipulations extending the time for disclosure or discovery require the approval of the court if they would interfere with the time set for completion of discovery or with the date of a hearing or trial." Utah R. Civ. P. 29(2) (emphasis added).

¶ 12 While granting the Spaffords' rule 6(b)(2) motion may well have been within the court's discretion on these facts, we cannot agree that denying it exceeded that discretion. The Spaffords had retained Kemp by December 2006 at the latest. Pursuant to the fourth amended scheduling order, they had until May 15, 2009, to designate him as their expert. Yet they did not designate him until August 3, 2009, and did not seek an extension of the final court-ordered expert disclosure deadline until October 5, 2009.

¶ 13 By way of excuse for their noncompliance with the final scheduling order, the Spaffords rely on the affidavit of their counsel stating that she believed the parties were operating under an informal, open-ended discovery schedule. In its oral findings, the trial court described that claim as "wholly inconsistent with the procedural history of this case, which included the scheduling order being amended on four occasions by written stipulation." The court additionally noted that "there is no written record whatsoever of any kind of open-ended flexible deadline schedule, . . . not even a letter acknowledging any such verbal agreement, not even a fax communication." Furthermore, the court reminded the parties that it "had previously denied the plaintiffs' motion to vacate all scheduling orders and this question or issue of there being a verbal open-ended extension was not raised." In sum, considering "the totality of those circumstances" together with "the importance of expert disclosure deadline dates and a scheduling order in this kind of a case," where designation of an expert witness is "extraordinarily important," the court found "that there in fact was no such open-ended deadline schedule." On this record, we cannot agree that the court abused its discretion in concluding that the Spaffords' or their counsel's neglect of the court-ordered cutoff was not excusable.

¶ 14 Second, the Spaffords contend that the trial court abused its discretion in striking the disclosure of their expert witness and his report under rule 37(f) of the Utah Rules of Civil Procedure rather than imposing some lesser sanction. In particular, they argue that (1) their failure to timely serve their expert witness report was harmless because Granite had previously received a copy of the report and (2) the court should have fashioned a less "draconian" remedy, such as limiting Kemp's testimony to the scope of his report.

¶ 15 The Spaffords served their expert disclosure more than two months after the deadline, a date that had been extended four times by stipulation of the parties and order of the court. The trial court struck the disclosure and expert witness report as untimely. In addition, it ruled that the report did not conform to the requirements of rule 26(a)(3)(B) of the Utah Rules of Civil Procedure. This rule requires that an expert witness report include, among other information, "the qualifications of the witness . . .; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Utah R. Civ. P. 26(a)(3)(B). Finally, the court ruled that, "at least in the initial report, the breach of duty or causation is not included within the scope of that report. So, even if that were consid-

ered, it would not satisfy the breach of duty and causation requirements."

¶ 16 As a general rule, "[t]rial courts have broad discretion in managing the cases assigned to their courts." *Preston & Chambers, P.C. v. Koller,* 943 P.2d 260, 262 (Utah Ct.App.1997) (alteration in original) (citation and internal quotation marks omitted). Rule 37(f) of the Utah Rules of Civil Procedure prohibits the use of an undisclosed witness, subject to two exceptions:

> If a party fails to disclose a witness ... as required by Rule 26(a) or Rule[ ] 26(e)(1), ... that party shall not be permitted to use the witness ... at any hearing unless the failure to disclose is harmless or the party shows good cause for the failure to disclose. In addition to or in lieu of this sanction, the court on motion may take any action authorized by [rule 37](b)(2).

Utah R. Civ. P. 37(f). "This language mandates that a trial court exclude late-filed evidence, but also gives a trial court discretion to employ an alternative sanction 'in addition to or in lieu of' exclusion." *Posner v. Equity Title Ins. Agency, Inc.,* 2009 UT App 347, ¶ 23, 222 P.3d 775 (quoting Utah R. Civ. P. 37(f)). The trial court also has discretion to determine "whether good cause excuses tardiness or whether prejudice ... result[s] from allowing the disputed evidence at trial." *Id.*

¶ 17 The Spaffords focus their argument on the prejudice prong of rule 37(f). They contend that their late expert witness disclosure did not prejudice Granite because Granite was already aware of the contents of Kemp's expert report. In support of this assertion, the Spaffords point to the fact that the report of Granite's expert, Larry Smiltneek, refers to what the Spaffords refer to as the "Kemp report."

¶ 18 The Spaffords' brief is vague in referring to the various documents produced by Kemp. However, the sequence of expert disclosures is crucial. The Kemp Letter is dated December 3, 2006. This letter was disclosed to Granite early on. However, on November 17, 2008, the Spaffords advised Granite that they had not yet selected their trial experts. The Spaffords filed their Disclosure of Expert Witness on August 3, 2009.

This document attached the Kemp Letter. The Affidavit of Granite's expert, Larry Smiltneek, is dated August 19, 2009. The Spaffords' Amended Disclosure of Expert Witness is dated September 23, 2009. Finally, the Affidavit of Clarence Kemp, which is different from the Kemp Letter, is dated October 12, 2009. Accordingly, so far as we can tell from the record, only the Kemp Letter was served on Granite before May 15, 2009, or for that matter before Granite's expert filed his report. Accordingly, we are not convinced, as the Spaffords contend, that Granite "had foreknowledge of the Spaffords' expert and Mr. Kemp's report *in its entirety.*" (Emphasis added.) It appears to us that what Granite had knowledge of was the Kemp Letter.

¶ 19 As the trial court correctly pointed out, however, the Kemp Letter omits much of the information required by rule 26(a)(3)(B). For example, the Kemp Letter does not include

> the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Utah R. Civ. P. 26(a)(3)(B). Nor does the Kemp Letter include "the substance of the facts and opinions to which the expert [wa]s expected to testify." *Id.* In fact, the Kemp Letter does not address causation at all. It does not mention the location of Iris's fall, nor does it state any opinion as to whether the condition of any portion of the Granite property caused her injuries. These facts refute the Spaffords' contention that Granite suffered no prejudice because it had received the "Kemp report" in a timely manner, or at least before its own expert produced his report. In short, the Kemp Letter did not serve the purpose of an expert disclosure.

¶ 20 In addition, the Spaffords argue that the trial court should have crafted a narrower sanction, such as limiting Kemp's testimony to "just what was contained in his [letter]." However, had Kemp's testimony in

fact been limited to the portions of his report that had been timely disclosed to Granite, it would have been of little or no use to the Spaffords in defending against Granite's summary judgment motion. Indeed, it could not have prevented summary judgment in Granite's favor. For example, the trial court found, and we agree, that "the breach of duty or causation is not included within the scope of that report."

¶ 21 Further, the Spaffords contend that "[t]he most draconian remedy the court could impose would be to strike the entire testimony of expert witness Clarence Kemp." This is far from the case. Although both parties cite *Morton v. Continental Baking Co.*, 938 P.2d 271 (Utah 1997), *see id.* at 274, 277 (affirming the trial court's dismissal of plaintiff's claims under rule 37(b)(2)(C) of the Utah Rules of Civil Procedure), the trial court here did not impose any of the array of sanctions available to it under rule 37(b)(2) of the Utah Rules of Civil Procedure. These include deeming a fact established for the purposes of the action, dismissing the action, ordering the party to pay reasonable expenses and attorney fees, and holding the non-compliant party in contempt. *See* Utah R. Civ. P. 37(b)(2). In short, while the trial court could have reopened discovery to allow for the Spaffords' late expert disclosure, it was not obligated to do so. *See Lippman v. Coldwell Banker Residential Brokerage Co.*, 2010 UT App. 89U, paras. 2–4, 2010 WL 1511748 (upholding exclusion of expert witness testimony where plaintiff sought an extension two days after deadline passed).

¶ 22 Third, the Spaffords contend that the trial court erred in striking Mr. Spafford's affidavit (or portions of it) as conclusory, stating legal conclusions, and containing matters that are not properly the subject of lay opinion testimony. Affidavits supporting or opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Utah R. Civ. P. 56(e). Accordingly, affidavits containing allegations that "are not based on personal knowledge, lack foundation, are conclusory, and contain hearsay"

may be stricken. *Murdock v. Springville Mun. Corp. (In re Rights to Use of All Water)*, 1999 UT 39, ¶ 27, 982 P.2d 65. Similarly, "[a]ffidavits reflecting an affiant's unsubstantiated conclusions and opinions are inadmissible." *Cabaness v. Thomas*, 2010 UT 23, ¶ 33, 232 P.3d 486. "A district court's refusal to consider evidence or to exclude evidence is reviewed under an abuse of discretion standard." *Id.* ¶ 31.

¶ 23 Here, the Spaffords contend that Mr. Spafford's affidavit contained well-founded factual observations made from personal knowledge that entitled him to testify to his personal observations of a lack of maintenance. Granite raised various objections to the competency of the affidavit, including that the affidavit's allegations of personal knowledge actually constitute legal or expert conclusions rather than statements of observed fact. The trial court struck Mr. Spafford's affidavit to "the extent that Mr. Spafford's affidavit attempts to offer those legal conclusions or expert conclusions on breach of duty and causation."

¶ 24 The Spaffords' opening brief devotes two pages to this issue. It includes an apt summary of the law pertaining to affidavits submitted on summary judgment. However, it fails to apply that law to the affidavit at issue. It identifies no particular allegations in the five-page Spafford affidavit that the Spaffords contend were wrongly struck. It states merely that Earl "spoke in the verified affidavit, with proper foundation, as to the date, time, circumstances, and personal observations he had made. There were multiple well founded factual observations made from personal knowledge from his affidavit alone that created competing inferences in favor of plaintiffs." Nor does the brief make any attempt to explain why, under the prevailing rules, the trial court abused its discretion in striking particular allegations. Finally, the Spaffords' argument makes no attempt to demonstrate prejudice, that is, the reasonable likelihood of a more favorable result on summary judgment had the allegations not been struck.

¶ 25 The argument is thus not adequately briefed. An adequately briefed argument "contain[s] the contentions and rea-

sons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9). "Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." *State v. Green*, 2004 UT 76, ¶ 13, 99 P.3d 820 (citation and internal quotation marks omitted). A reviewing court " 'is not simply a depository in which the appealing party may dump the burden of argument and research.' " *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl*, 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 416 N.E.2d 783, 784 (1981). "And we may refuse, sua sponte, to consider inadequately briefed issues." *State v. Lee*, 2006 UT 5, ¶ 22, 128 P.3d 1179 (citing Utah R.App. P. 24(j)); *Bernat v. Allphin*, 2005 UT 1, ¶ 38, 106 P.3d 707). We take that course here.

■ ¶ 26 Fourth, the Spaffords contend that the trial court erred in requiring expert witness testimony on the questions of breach of duty and causation. The Spaffords alleged that the curb in question was unusually tall, "tapered aggressively," and was "in a state of disrepair"; that Iris attempted to step up onto the curb with her right foot; that "as she went to lift her left foot, she did not get her foot up completely onto the higher part of the curb"; and that she "lost her balance and fell backward towards the drain hitting her head on the asphalt of the parking lot." [4] As a result, according to the complaint, Iris "sustained traumatic brain injury, subdural hemorrhage, occipital head laceration, basilar skull fracture, left frontal and temporal lobe hemorrhage, aspiration pneumonia, memory loss, exacerbated hearing loss in one ear, and significant cognitive loss."

¶ 27 In moving for summary judgment, Granite relied on the affidavit of its expert witness, Larry Smiltneek. Smiltneek alleged that the top of the curb is nearly perfectly level, that he had observed many pedestrians negotiate it without hesitation or difficulty, and that the height of the curb in question is about the same height as an ordinary step. He opined that the asphalt pavement, curb, and sidewalk were not dangerous or defective and were not in violation of building code requirements. He further opined that Iris's backward fall was not caused by the condition of the pavement but by her loss of forward momentum due to something in her own physical condition.

¶ 28 In arguing that an expert witness was not necessary to establish causation, the Spaffords cite no cases involving curb or parking lot design or maintenance. Rather, they limit their argument to challenging the trial court's reliance on *Fox v. Brigham Young University*, 2007 UT App 406, 176 P.3d 446. There, the plaintiff fell while descending a stairway. *See id.* ¶ 1. The plaintiff, who had been previously diagnosed with osteoarthritis in her right knee, stated that she "felt her right knee go out as she was going down." *Id.* ¶ 5. This court held that although the plaintiff "could testify that she descended the stairway, fell, and experienced pain, she needed expert testimony to establish her prima facie case of causation and to prevent the fact-finder from resorting to speculation." *Id.* ¶ 23. Absent expert testimony, the plaintiff "failed to prove the element of causation and her negligence claim failed as a matter of law." *Id.*

¶ 29 On appeal the Spaffords contend that "there was not a scintilla of evidence of Iris's medical condition including testimony nor records before the court on the motion for summary judgment, and *Fox* was wholly inapplicable to this matter." Unlike the plaintiff in *Fox*, the only evidence of Iris Spafford's medical condition before her fall, according to the Spaffords, was the Spafford Affidavit "testifying that Iris had no history of fractures, and that prior to the fall, she was an active, vibrant woman."

¶ 30 We agree with the Spaffords that *Fox* is factually distinguishable from this case. However, the question before the trial court was whether the Spaffords could establish

---

**4.** We assume for purposes of this argument that the trial court did not strike these observations in the Spafford affidavit.

breach of duty and causation without the expert testimony of a civil engineer. In this context, the trial court cited *Fox* for the more general principle that "in order to establish breach of duty and causation, which are essential elements to a negligence cause of action, ... expert testimony is required" when "breach of duty and causation [are] beyond the common scope and experience of lay persons."

¶ 31 The trial court was correct that "[w]here the average person has little understanding of the duties owed by particular trades or professions, expert testimony must ordinarily be presented to establish the standard of care." *Wycalis v. Guardian Title of Utah*, 780 P.2d 821, 826 n. 8 (Utah Ct.App. 1989) (collecting cases relating to doctors, architect, engineers, insurance brokers, and professional estate executors). And our research suggests that expert witnesses are routinely used in cases involving the height and slope of curbs and steps. *See, e.g., Caswyck JSB, LLC v. Crowe*, 265 Ga.App. 316, 593 S.E.2d 758, 761 (2004) (observing that plaintiff "presented evidence, through expert testimony, that the design of the curb was deceptive and hazardous"); *Alqadhi v. Standard Parking, Inc.*, 405 Ill.App.3d 14, 345 Ill.Dec. 145, 938 N.E.2d 584, 586 (2010) (stating that plaintiff's engineer opined "within a reasonable degree of forensic engineering certainty that every Federal and State accessibility standard, every National consensus, accessibility standard, building or property maintenance standard ... supports the assertion that an abrupt vertical change in the level of adjacent horizontal surfaces in excess of one-quarter inch is a dangerous tripping hazard"); *Reinemann v. Stewart's Ice Cream Co.*, 238 A.D.2d 845, 656 N.Y.S.2d 546, 547 (N.Y.App.Div.1997) (stating that plaintiff's architect "opined that the effective height of the curb, due to the slope of the parking lot, was in excess of eight inches and contrary to the standards promulgated by the American Institute of Architects"); *Kioleidis v. Pergament United Sales, Inc.*, 150 A.D.2d 526, 541 N.Y.S.2d 117, 118 (N.Y.App.Div.1989) ("A licensed professional engineer testified that the curb in question exceeded the seven and three-quarter inches maximum height prescribed for risers in [the code]."); *Holl v.*

*Montrose, Inc.*, 82 Ohio App.3d 644, 612 N.E.2d 1288, 1291 (1992) ("[The] affidavit of the expert attached to [the plaintiff's] memorandum in opposition to summary judgment indicated that the design of the stairway constituted an unreasonably dangerous condition.").

¶ 32 The Spaffords have not demonstrated that this general rule should not apply here. Indeed, the case at bar is similar to *Lay v. Jordan's Furniture, Inc.*, No. 10–P–1344, 2011 WL 3444177 (Mass.App.Ct.2011). There, a customer tripped attempting to step onto a curb outside a store. *See id.* at *1. The customer offered no "expert testimony on the significance of the curb height, or on whether the particular curb posed a danger to the public." *Id.* The defense expert's affidavit indicated that the curb did not violate the state building code, architectural regulations, or the Americans with Disabilities Act. *See id.* In fact, he opined that "curb heights in parking lots often vary, due to differing drainage and slope requirements for sidewalks and paved parking surfaces[;][a]s a result, a curb height of eight or nine inches is not unusual in the industry or excessive." *Id.* (alterations in original). Although "summary judgment is generally disfavored in an action for negligence," the Appeals Court of Massachusetts affirmed summary judgment against the plaintiff on the ground that the store "sufficiently demonstrated that [the patron] lacked any reasonable expectation of proving that the defendant committed a breach of the duty of reasonable care." *Id.*

¶ 33 Fifth, the Spaffords contend that the trial court erred in granting Granite's motion for summary judgment. "Summary judgment is appropriate only where (1) 'there is no genuine issue as to any material fact' and (2) 'the moving party is entitled to judgment as a matter of law.'" *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439 (quoting Utah R. Civ. P. 56(c)). Thus, "we review the district court's decision to grant summary judgment for correctness, granting no deference to the [district] court." *Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122 (alteration in original) (internal quotation marks omitted).

¶ 34 Here, once the Kemp Affidavit was struck, the Spaffords were left with no expert testimony that the height of the curb or the slope of the asphalt "violated any specific industry standards or otherwise constitute[d] a deviation from accepted practice.'" *Alger v. CVS Mack Drug of New York, LLC*, 39 A.D.3d 928, 833 N.Y.S.2d 289, 290 (N.Y.App. Div.2007) (citation and internal quotation marks omitted). Therefore, the trial court did not err in dismissing the Spaffords' negligence claim for failure to present expert testimony on the elements of breach of duty and causation. As a result, we affirm the trial court's summary judgment ruling in favor of Granite.

■ ¶ 35 Sixth, the Spaffords contend that their rights under the Due Process Clause and rule 63(b) of the Utah Rules of Civil Procedure were violated when Granite was allowed to file a memorandum in opposition to the Spaffords' motion to disqualify Judge Medley.[5] The Spaffords argue that Granite thus assumed "an advocacy role" "almost akin to Granite entering a general appearance for the trial court." This "desperate act," they contend, "constitutes nothing but a transparent effort to curry favor with the trial court." Granite's filing, they conclude, "has denied [the Spaffords] any meaningful opportunity to try their case, upon remand, before an impartial and disinterested tribunal within the meaning of the Fourteenth Amendment." A due process challenge is a question of law, which we review for correctness. *See Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

¶ 36 To begin with, this case presents nothing remotely approaching a violation of the Due Process Clause. *Cf. Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129 S.Ct. 2252, 2256–57, 173 L.Ed.2d 1208 (2009) (holding that due process required disqualification of a state supreme court justice from an appeal, where the appellant's chairman and president contributed $3 million to that supreme court justice's election campaign after a $50 million verdict was entered in the trial

court). *But see id.* at 2272–74 (Roberts, C.J., dissenting, with three judges concurring in the dissent) (arguing that the $3 million did not demonstrate bias, but only "an amorphous 'probability of bias,'" and thus did not offend the Due Process Clause). Indeed, in *Caperton v. A.T. Massey Coal, Co.*, 556 U.S. 868, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009), the United States Supreme Court itself entertained briefing and argument from a party contending that a lower court judge was not biased—the very act that the Spaffords here contend violated their due process rights. *See id.*

■ ¶ 37 Nor do we agree that Granite's memorandum in opposition to the Spaffords' motion for judicial disqualification created an appearance of impropriety requiring disqualification. "Obviously, actual bias need not be found to support disqualification. An appearance of bias or prejudice is sufficient for disqualification, but even disqualification because of appearance must have some basis in fact and be grounded on more than mere conjecture and speculation." *Madsen v. Prudential Fed. Sav. & Loan Ass'n*, 767 P.2d 538, 544 n. 5 (Utah 1988) (citation omitted).

¶ 38 We are not convinced that the Utah Rules of Civil Procedure prohibit the nonmoving party from filing papers in opposition to a motion for judicial disqualification. The governing rule makes no mention of a responsive memorandum one way or the other. Under rule 63(b)(1)(A) of the Utah Rules of Civil Procedure, a party "may file a motion to disqualify a judge. The motion shall be accompanied by a certificate that the motion is filed in good faith and shall be supported by an affidavit stating facts sufficient to show bias, prejudice or conflict of interest." Utah R. Civ. P. 63(b)(1)(A). A later subsection of the rule directs that "[t]he judge against whom the motion and affidavit are directed shall, without further hearing, enter an order granting the motion or certifying the motion and affidavit to a reviewing judge. The judge shall take no further action in the case until the motion is decided." *Id.* R. 63(b)(2).

---

5. Because the Spaffords offer no separate state constitutional analysis, we consider only their federal due process claim. *See State v. Lafferty*, 749 P.2d 1239, 1249 (Utah 1988) (considering only a claim under the federal constitution where the argument on appeal failed to advance a separate state constitutional analysis).

¶ 39 We agree that in a rule setting forth the disqualification process in some detail, the omission of any reference to a response by the nonmoving party is conspicuous. On the other hand, as Granite notes, rule 63(b)(1)(A) specifies that a party may file a *motion* to disqualify a judge. *See id.* 63(b)(1)(A). Rule 7(c)(1) of the Utah Rules of Civil Procedure governs the response to motions. *See id.* R. 7(c)(1). It specifies that within ten days after service of a motion "a party opposing the motion shall file a memorandum in opposition." *Id.* R. 7(c)(1).[6]

¶ 40 We leave for another day the question of whether these rules prohibit a response to a motion for judicial disqualification. Assuming without deciding that they do, we conclude that the Spaffords' claim of an appearance of impropriety here has no basis in fact, and was grounded on nothing more than "mere conjecture and speculation." *Madsen,* 767 P.2d at 544 n. 5. Our legal system contemplates that parties will as a matter of course challenge and defend the actions of judges. Parties routinely appeal rulings of trial and intermediate courts and occasionally even seek extraordinary relief by filing a petition naming the judge as a party respondent. *See, e.g., State v. The Honorable Stephen L. Henriod,* 2006 UT 11, 131 P.3d 232. Conversely, parties defend on appeal the rulings of lower courts and even file, as real parties in interest, briefs in opposition to petitions for extraordinary relief. *See, e.g., id.* These actions are not reasonably viewed as transforming the parties into adversaries of the judges whose actions they challenge or advocates for the judges whose actions they defend. The Spaffords have given us no reason to view the papers filed by Granite here in any different light.

¶ 41 Moreover, the Affidavit of Prejudice relies largely if not exclusively on adverse rulings of the trial judge: "In summary, the court denied each and every procedural request, motion, objection, and any other nuance, which would afford plaintiffs any advantage, let alone create a level playing field." "However, 'no deduction of bias and prejudice may be made from adverse rulings by a judge.'" *In re Affidavit of Bias,* 947 P.2d 1152, 1154 (Utah 1997) (Zimmerman, C.J., sitting alone) (quoting 46 Am.Jur.2d *Judges* § 219 (1994)). We thus conclude that, whether authorized by the rules or not, Granite's memorandum in opposition to disqualification did not create an appearance of impropriety requiring the disqualification of Judge Medley.

■■■■ ¶ 42 Finally, the Spaffords contend that various rulings of the trial court violated their rights under the state and federal constitutions. The Spaffords acknowledge that these claims of error are unpreserved and seek review under the plain error doctrine. To demonstrate plain error, a defendant must establish that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993). "Utah courts have repeatedly held that a trial court's error is not plain where there is no settled appellate law to guide the trial court." *State v. Ross,* 951 P.2d 236, 239 (Utah Ct.App.1997); *see also State v. Low,* 2008 UT 58, ¶ 41, 192 P.3d 867 (stating error may be obvious if it contravenes the plain language of the relevant statute); *State v. Dean,* 2004 UT 63, ¶ 16, 95 P.3d 276 (explaining that plain error requires a showing "that the law governing the error was clear at the time the alleged error was made").

¶ 43 Here, the Spaffords' brief does not demonstrate or even contend that any ruling of the trial court violated settled appellate law. They cite *Butler v. Sports Haven International,* 563 P.2d 1245 (Utah 1977), a negligence case that applies a light constitutional patina to common rules of summary judgment. *See id.* at 1246–47. *Butler* states

---

**6.** The Spaffords rely on *State v. Poteet,* 692 P.2d 760 (Utah 1984), for the proposition that "rule 63(b) does not designate the procedure therein as one done by motion." *Id.* at 762–63. However, *Poteet* construed an earlier version of the rule.

In 1984, rule 63(b) did not in fact refer to a motion but specified that a party seeking to disqualify a judge "shall make and file an affidavit that the judge ... has a bias or prejudice." *See* Utah R. Civ. P. 63(b) (1985).

that, "consistent with" the Open Courts Clause, Utah Constitution, article I, section 11, "if there is doubt or uncertainty as to the questions of negligence, proximate cause, or contributory negligence, such that reasonable minds might conclude differently thereon, the doubt should be resolved in favor of granting the party the privilege of attempting to prove his right to recover on a trial." *Id.* at 1246. However, *Butler* also states that the defendant "likewise has rights to be asserted and protected," including "the right to move for a summary judgment, which challenges the contentions of the [plaintiff], saying in effect: even if the facts are as you claim, they do not establish any legal basis for recovery." *Id.* We see nothing here to put the trial court on notice that it was violating or even remotely approaching the limit of any constitutional principle. Accordingly, the Spaffords have not demonstrated that in granting summary judgment the trial court committed plain constitutional error.

¶ 44 Affirmed.

¶ 45 WE CONCUR: STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN, Judges.